**In re Diane STONE, Plaintiff,**

v.

**Daniel R. SATRIANA, Jr; Hall & Evans, a Colorado partnership and Hall and Evans, L.L.C.; Sean R. Gallagher; Jane B. Garrow; Banta, Hoyt, Everall & Farrington, L.L.C. f/k/a Banta, Hoyt, Greene & Everall, P.C.; Coregis Insurance Company, f/k/a International Surplus Lines Insurance Company; Crum and Forster Insurance Companies; Safeco Insurance Company; and City of Greenwood Village, Defendants.**

**No. 01SA177.**

Supreme Court of Colorado, En Banc.

Feb. 25, 2002.

Jean E. Dubofsky, Jean E. Dubofsky, P.C., Boulder, Colorado, W. Randolph Barnhart, Angela L. Ekker, Hillyard, Barnhart, Ekker & McNally, L.L.P., Englewood, Colorado, Attorneys for Plaintiff.

K. Preston Oade, Michael J. Hofmann, Holme Roberts & Owen LLP, Denver, Colorado, Attorneys for Defendants, Satriana, Jr., Hall & Evans, LLC and Sean R. Gallegher.

Geri O'Brien Williams, Denver, Colorado, Attorney for Defendant, Coregis Insurance Company.

Chief Justice MULLARKEY delivered the Opinion of the Court.

In this original proceeding, we examine whether attorney defendants in a legal malpractice action can designate the opposing party's current counsel as a nonparty at fault and subsequently disqualify that counsel.

Diane Stone was a defendant in a federal case that arose out of the City of Greenwood Village's investigation of Lawrence Ocrant's death. In state district court, Stone filed a legal malpractice action against her former attorneys, claiming that their malpractice caused the judgment against her in the federal suit. The former attorneys claim that Stone's current counsel contributed to her loss because, acting on the current counsel's advice, Stone did not appeal the underlying case. Accordingly, the former attorneys sought to designate Stone's current counsel as nonparties at fault pursuant to section 13–21–111.5, 5 C.R.S. (2001). The trial judge granted the motion to designate the current attorneys as nonparties at fault and subsequently granted a motion to disqualify them. Stone petitioned this court to overturn the two trial court orders. We issued a rule to show cause and now make that rule absolute.

Strong public policy considerations warrant subjecting a nonparty-at-fault designation of opposing counsel to heightened scrutiny. Because the defendant attorneys did not allege a cognizable malpractice claim, the nonparty designation of the current attorneys was in error as was their disqualification.

## I.

In 1984, Lawrence Ocrant was found dead in his home. Diane Stone (Stone) was a Greenwood Village police officer involved in the investigation of this death. In 1991, Lawrence Ocrant's children (Ocrant children) brought a suit in federal district court against Stone as well as the Greenwood Village Police Chief and the City of Greenwood Village (Greenwood Village). The case involved 42 U.S.C. § 1983 claims as well as state-law claims of conspiracy and outrageous conduct regarding the investigation of Ocrant's death. Daniel L. Satriana, Jr., Sean Gallagher, and Hall and Evans LLP (collectively, Hall and Evans) represented Stone and her co-defendants in the federal case. The lawsuit resulted in a verdict against Stone and her co-defendants.

Stone filed a notice of appeal. However, neither Greenwood Village nor its insurance company would indemnify Stone.[1] Moreover, both refused to post her appeal bond for $698,738. Thus, in October 1998, the Ocrant children began to garnish Stone's wages in order to collect the judgment. Stone obtained new counsel, Christina Habas (Habas), through whom she negotiated a *Bashor* agreement[2] with the Ocrant children.

---

1. After trial, Hall and Evans asked the court to amend the judgment by entering specific findings that the conduct on the part of both Stone and the Chief of Police was willful and wanton. Based on this finding, Greenwood Village now takes the position that Stone acted outside of the scope of employment.

2. A *Bashor* agreement is a settlement reached between opposing parties after a judgment has been obtained against the defendant. The pre-

Pursuant to this arrangement, the Ocrant children agreed not to pursue their judgment against Stone in exchange for her agreement to pursue claims against Hall and Evans, Greenwood Village, and both Greenwood Village's attorney and insurance company (collectively, state court defendants)-sharing any recovery with the Ocrant children-and to dismiss her appeal of the underlying judgment.[3] The chief of police also settled with the Ocrant children. Only Greenwood Village pursued an appeal. On appeal, the Tenth Circuit reversed the judgment based on an error in the admission of evidence, and remanded for a new trial. *Stump v. City of Greenwood Vill.*, 211 F.3d 527 (10th Cir. 2000).

Stone retained Randolph Barnhart and Angela Ekker of the law firm Branney, Hillyard & Barnhart (collectively, Barnhart and Ekker) to represent her in her case against the state court defendants. In March 1999, Stone filed her complaint in Denver District Court. Trial was originally set for July 2001.

In May 2000, Hall and Evans moved for permission to designate Barnhart and Ekker as nonparties at fault for Stone's damages pursuant to section 13–21–111.5, 5 C.R.S. (2001). As justification for this designation, Hall and Evans alleged that Stone failed to mitigate any damages from the underlying federal suit because she settled with the Ocrant children rather than pursue an appeal. Hall and Evans further argued that this failure to appeal can be attributable to Barnhart and Ekker's malpractice because, although they did not represent Stone at the time when she entered into the agreement with the Ocrant children, Stone's lawyer, Habas, consulted them. Therefore, Hall and

Evans concluded, Barnhart and Ekker are partly responsible for Stone's damages and should be joined as nonparties at fault.

Hall and Evans asked the trial judge to allow this designation even though the motion was brought outside of the statutorily provided timeframe.[4] They argued that since the Tenth Circuit reversal did not occur until May 2000, they could not have known that a failure to appeal amounted to a failure to mitigate until then. The trial judge allowed the designation and subsequently granted a motion to disqualify Barnhart and Ekker. The district court denied Stone's motion for reconsideration of the order of disqualification.

Stone petitioned this court to exercise its original jurisdiction and issue a rule to show cause pursuant to C.A.R. 21. She asserts that the trial court erred in designating Barnhart and Ekker as nonparties at fault and in granting the motion to disqualify them. She further asserts that the injury of being denied the lawyers of her choice-who have already worked extensively on her case[5]-cannot adequately be remedied on appeal. Stone asks this court to set aside both the trial court's designation of Barnhart and Ekker as nonparties at fault and the court's disqualification of Barnhart and Ekker.

## II.

In civil liability cases, section 13–21–111.5 allows defendants to designate as a nonparty at fault an individual or entity who is either "wholly or partially at fault" for the damages alleged by the plaintiff. § 13–21–111.5, 5 C.R.S. (2001). This provision en-

vailing party agrees not to execute on the judgment in exchange for the defendant's agreement not to appeal the judgment and instead to pursue claims against third parties (and share any recovery with the original plaintiff). *Northland Ins. Co. v. Bashor*, 177 Colo. 463, 494 P.2d 1292 (1972).

3. Stone's claims against Hall and Evans and the city attorney are for legal malpractice and breach of fiduciary duty. In essence, Stone claims that Hall and Evans should not have represented both her and her employer because their interests were not aligned. She asserts that Hall and Evans favored Greenwood Village's interests, and sacrificed hers, when they failed to

object to instructions allowing the jury to find Stone's conduct willful and wanton. Stone's claim against Greenwood Village is for indemnification, and against the insurance provider is for bad faith breach of insurance contract.

4. Section 13–21–111.5(3)(b), 5 C.R.S. (2001) mandates that the defendant give notice to the nonparty within ninety days following the commencement of the action unless the court deems that a longer period is necessary.

5. At the time of the motion to designate Barnhart and Ekker as nonparties, those attorneys had responded to, and prevailed on, four motions to dismiss and had engaged in extensive discovery.

sures that a party that is found liable will not be responsible for more than its fair share of the damages. *See B.G.'s, Inc. v. Gross,* 23 P.3d 691, 693–94 (Colo.2001). We recently addressed the requirements for a nonparty designation in *Redden v. SCI,* 38 P.3d 75 (Colo.2002). In *Redden,* we held that a nonparty-at-fault designation is improper when the moving defendant fails to establish a prima facie case that the potential nonparty breached a legal duty to the plaintiff. *Id.* at 80 (holding that it is proper to deny a nonparty-at-fault designation of a treating chiropractor in a car accident case when the defendant failed to make out a prima facie case that the chiropractor breached a legal duty to the plaintiff).

Hall and Evans claim that it is appropriate to designate Barnhart and Ekker as nonparties at fault because, through their own malpractice, they perpetuated Stone's damages. They claim that by failing to advise Stone to appeal the adverse judgment, Barnhart and Ekker did not adequately mitigate Stone's damages. We disagree. As in *Redden,* we conclude that the defendants in this case have failed to make out a prima facie claim that Barnhart and Ekker breached a legal duty to Stone.

We first discuss how other jurisdictions have handled the problem at issue here, highlighting the public policy concerns that have led courts to closely scrutinize a legal malpractice defendant's attempt to designate successor counsel as a nonparty at fault. Second, we explain that because Hall and Evans have failed both to establish that Barnhart and Ekker's conduct fell below the standard of care and that a failure to appeal perpetuated any damages, they have failed to allege a cognizable malpractice claim under which Barnhart and Ekker could be joined as nonparties at fault. Thus, we conclude that the trial court erred in designating Barnhart and Ekker as nonparties at fault and in granting the motion to disqualify them.

### A.

Because there is no Colorado precedent directly on point, we have turned to other jurisdictions for guidance. The majority of courts that have addressed this issue have not allowed legal malpractice defendants to designate opposing parties' current attorneys as nonparties at fault or otherwise assert legal malpractice claims against them. *See Austin v. Superior Court,* 72 Cal.App.4th 1126, 85 Cal.Rptr.2d 644 (1999); *Cal. State Auto. Ass'n v. Bales,* 221 Cal.App.3d 227, 270 Cal.Rptr. 421 (1990); *Holland v. Thacher,* 199 Cal.App.3d 924, 245 Cal.Rptr. 247 (1988); *Gauthier v. Kearns,* 47 Conn.Supp. 166, 780 A.2d 1016 (2000); *Waldman v. Levine,* 544 A.2d 683 (D.C.1988); *Melrose Floor Co., Inc. v. Lechner,* 435 N.W.2d 90 (Minn.Ct.App. 1989); *Eustis v. The David Agency,* 417 N.W.2d 295 (Minn.Ct.App.1987); *Hughes v. Housley,* 599 P.2d 1250 (Utah 1979). *But see Maddocks v. Ricker,* 403 Mass. 592, 531 N.E.2d 583 (1988)(allowing a defendant in a legal malpractice action to bring a third-party complaint against successor attorney when successor attorney may have caused the original injury for which predecessor counsel was allegedly responsible); *Parler v. Miles,* 359 Md. 671, 756 A.2d 526 (2000)(refusing to exempt a potential joint tortfeasor from accepting the blame, and relying upon sanctions to deter frivolous claims).

Although several public policy concerns inform these decisions, three predominate. First, courts focus on the danger of joining successor counsel as either a nonparty or a third-party as an unfair litigation tactic. Second, there is concern over the adverse effect it would have on a client's ability to pursue a malpractice action. Third, such action would allow a third party to interfere with the attorney-client confidences of the client. We discuss each of these policy concerns in turn.

First, courts are concerned about parties using the nonparty designation as a litigation tactic. To allow a defendant to designate its opponent's attorney as a nonparty at fault gives that party a means to disqualify the plaintiff's attorney of choice.[6] *See Austin,* 85 Cal.Rptr.2d at 646. (holding that a legal malpractice defendant may not cross-complain against plaintiff's current lawyer for contri-

---

6. Because attorneys do not generally owe a legal duty to their client's adversary, *Mehaffy v. Central Bank,* 892 P.2d 230, 235 (Colo.1995), a non-

party-at-fault designation uniquely allows an attorney to raise malpractice allegations against his adversary.

bution in part because it would provide the legal malpractice defendant with a "tactical weapon not available to defendants in other tort actions"). Such a move can extend litigation for months and have a profound financial and psychological impact on an already taxed litigant. *See* Holland, 245 Cal.Rptr. at 250. (holding that public policy considerations preclude cross-complaints for indemnity between attorneys in part because "[d]epriving a party of the lawyer of his [or her] choice, who is also the lawyer most familiar with the background of the case, is a serious matter." (alterations in original)(quotation marks omitted)).

Second, courts are concerned with the ramifications that joining the current malpractice attorney will have on that attorney's ability to zealously pursue a legal malpractice claim. Jurisdictions that do not allow a malpractice defendant to bring the current plaintiff attorney into the suit recognize that to allow the current attorney to be accused of her own malpractice would create a significant conflict:

> [To] expose the attorney to actions for negligence brought by parties other than the client, would inject undesirable self-protective reservations into the attorney's counseling role and tend to divert the attorney from single-minded devotion to his client's interests. . . .

*Holland*, 245 Cal.Rptr. at 251 (quotation marks omitted); *see also Cal. State Auto. Ass'n*, 270 Cal.Rptr. at 423 (stating that, "if faced with a potential indemnity claim, the attorney's sense of self-preservation might impinge on his or her duty of undivided loyalty to the client").

Moreover, if such a procedure is routinely permitted, a conflict may arise for the lawyer even before a malpractice suit is filed, having a chilling effect on legal malpractice claims:

> Because of the nature of the attorney function, the attorney is the only professional who has a duty to advise a client that a malpractice action against another professional may provide a solution to the client's difficulties. If such a malpractice action could generate a cross-complaint against

the attorney who urged that course, it can easily detract from the attorney's duty to selflessly and energetically serve the client's interests.

*Holland*, 245 Cal.Rptr. at 253 (citing *Goldfisher v. Superior Court*, 133 Cal.App.3d 12, 183 Cal.Rptr. 609 (1982)); *see also Melrose Floor Co.*, 435 N.W.2d at 92 ("The rule of law barring contribution claims [against plaintiff malpractice attorneys] encourages quality legal services.").

Third, allowing a legal malpractice defendant to bring opposing party's counsel into the suit would have a destructive effect on client confidences.

 Generally, an attorney may not reveal client confidences without either the explicit or implicit consent of the client. *Mountain States Tel. & Tel. Co. v. Di Fede*, 780 P.2d 533, 542 (Colo.1989); § 13–90–107(1)(b), 5 C.R.S. (2001).[7] When a client brings a malpractice allegation, the attorney-client privilege is deemed impliedly waived. 4 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 32.28 (4th ed.1996). Thus, an accused attorney, such as Hall and Evans, can adequately defend itself against a malpractice claim and reveal client confidences if necessary.

 When a third party raises the malpractice claim, however, the considerations are quite different. The attorney may still be permitted to defend and to reveal client confidences in the process of defending the claim. *See People v. Robnett*, 859 P.2d 872, 879 (Colo.1993) (noting that Colorado Rules of Professional Conduct 1.6(c), which allows a lawyer to reveal client confidences "to the extent the lawyer reasonably believes necessary . . . to respond to allegations in any proceedings concerning the lawyer's representation of the client," is not restricted to actions initiated by the client). Obviously, when a third party brings the claim, the client cannot be deemed to have impliedly waived the privilege. Thus, to allow such a claim allows a third party (often an adversary) to jeopardize the confidences that the

---

**7.** For a detailed discussion regarding the purposes behind this privilege see *Wesp v. Everson,* 33 P.3d 191, 196–99 (Colo.2001).

client has conveyed to her current counsel. *See Gauthier*, 780 A.2d at 1023 (noting that if a court were to allow the defendant attorneys in a malpractice action to join the successor attorney based on an allegation that he contributed to the damages by failing to appeal the underlying action, "[the current attorney] would have to ask the client ... to waive the attorney-client privilege so that [the current attorney] could disclose the content of his conversations with his clients as to whether he recommended not taking an appeal, why he recommended that action and his clients' responses to his recommendations").

In addition to addressing these public policy concerns that warrant heavy scrutiny of a legal malpractice defendant's attempt to join successor counsel, some courts that have addressed this issue have recognized that there is no legal duty for a legal malpractice plaintiff's counsel to ameliorate the damage done by predecessor counsel. The District of Columbia Court of Appeals addressed this issue in *Waldman*, 544 A.2d 683. In *Waldman*, the plaintiff brought a legal malpractice claim against her former lawyers whose negligence, she claimed, led to the dismissal of her medical malpractice action. *Id.* The defendant lawyers filed a third-party complaint against the plaintiff's current lawyers, alleging that the current lawyers were partially responsible for the damages because they failed to have the dismissal set aside. *Id.* at 692. The court inquired into the nature of the alleged wrongdoing of the successor counsel. *Id.* It examined whether the client's injury continued to accrue after the successor attorney came on the scene and whether the action that successor counsel allegedly failed to take was mandated or whether it involved a choice among alternatives that required the use of professional judgment. *Id.* at 692–93. The court concluded:

> Where there is a choice to be made, successor counsel has no duty to the client to take action which would lessen the damages resulting from predecessor counsel's negligence, and is not liable to predecessor counsel for contribution.... Because we conclude that a client's successor counsel should not be required to choose between a course of conduct which is in the best interest of the client and the course best suited to insulate successor counsel from a

third-party complaint by predecessor counsel, we hold that the dismissal was proper.

*Id.* at 693; *see also Coldwell Banker v. Eustice*, 145 A.D.2d 460, 535 N.Y.S.2d 102 (1988)(noting that it is improper to grant motion to disqualify attorney third-party defendants when third-party complaint against opposing party's attorney failed to state a claim for contribution on a legal malpractice theory); *cf. Maddocks*, 531 N.E.2d at 589 (allowing third-party complaint against successor attorney when successor attorney failed to oppose summary judgment motion against the client and thus may have been the legal cause of the client's injury); *Brown v. LaChance*, 165 Wis.2d 52, 477 N.W.2d 296, 302 (App.1991)(allowing one counsel to indemnify client's other counsel when other counsel may have caused the original injury).

Similarly, the Supreme Court of Utah has held that a failure to appeal the damage done by the original attorney's malpractice cannot be malpractice by the successor counsel. *Hughes*, 599 P.2d 1250. In *Hughes*, a client filed a malpractice action against his former attorney for damages arising from a default judgment. Similar to Hall and Evans in the current case, the former attorney then filed a third-party complaint against the successor attorney for failure to set aside the default judgment. In upholding the dismissal of the third-party complaint, the court noted that at the time the current attorneys began their representation of the client, the total damage was complete, and the current attorneys did not exacerbate the client's condition. *Id.* at 1253. In addition, the court noted that as a matter of public policy, "no duty should be imposed on succeeding legal counsel in favor of a preceding counsel. To impose such a duty would be to subject the second attorney to potential conflicts of interest in trying to serve two masters." *Id.* at 1254; *see also Banker v. Nighswander*, 37 F.3d 866, 873 (2d Cir.1994)(applying New Hampshire law, holding that an attorney retained for a malpractice action would have risked a conflict of interest if he pursued an appeal of the underlying action because the malpractice action would only succeed if the outcome in the underlying action was "either correct or predictable").

We are persuaded by the reasoning of these decisions. In addition to the strong public policy concerns that warrant skepticism of a legal malpractice defendant's attempt to designate successor counsel as a nonparty at fault, there is no legal duty for a legal malpractice plaintiff's counsel to ameliorate the injury effected by predecessor counsel. Without a breach of a legal duty, the nonparty-at-fault designation is improper.

### B.

■ As we recently established in *Redden*, a nonparty-at-fault designation is only proper when the defendant has made out a prima facie case that the potential nonparty breached a legal duty to the plaintiff. 38 P.3d at 80. Because Hall and Evans have failed to allege a cognizable legal malpractice claim on which Barnhart and Ekker's fault can rest, the designation of Barnhart and Ekker as nonparties at fault was in error.

■ As a matter of law, in order to establish a legal malpractice claim, three elements must be proved: (1) the attorney owed a duty of care to the plaintiff, (2) the attorney breached that duty, and (3) the attorney proximately caused damage to the plaintiff. *Bebo Constr. Co. v. Mattox*, 990 P.2d 78, 83 (Colo.1999). At least two of these elements are absent in the current case. We find, as a matter of law, that a duty was not breached and that no damages can be attributable to the agreement.[8]

■ First, Barnhart and Ekker's conduct did not fall below the standard of care. An attorney owes her client the duty "to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession in carrying out the services for his client." *Id.* (quotation marks omitted). The relevant focus of the inquiry is on what ordinary members of the profession would have done at the time the action was taken, *Fleming v. Lentz*, 873 P.2d 38, 40 (Colo.App.1994), thus excluding the benefit of hindsight. *See* Mallen, *supra*, § 18.10.[9]

In this case, Hall and Evans claim that by recommending the *Bashor* agreement, rather than appealing the district court decision, Barnhart and Ekker breached a duty to Stone. Hall and Evans assert that the advice amounts to a breach because, through failing to appeal, they kept Stone from adequately mitigating her damages.

■ As a matter of law, such advice does not fall below the standard of care. A failure to appeal can never be a failure to mitigate damages caused by malpractice at trial. "The law does not require a person to take affirmative legal action to prevent [the tortfeasor] from suffering the result of the tortious act." *Stadheim v. Becking*, 290 N.W.2d 273, 274 (S.D.1980)(citing *Chicago, Burlington & Quincy R.R. v. Wheaton*, 76 S.D. 467, 80 N.W.2d 868 (1957)). "The general rule is that 'injured parties need not . . . institute and prosecute [law] suits' in order to mitigate damages." *Robinson v. Carney*, 632 A.2d 106, 108 (D.C.1993)(alterations in original)(citing 2 Marilyn Minzer et al., *Damages in Tort Actions* § 16.22, at 16–34 & 35 (1992)).

Litigation is too uncertain and costly to impose such a duty on a party. *Accord Muhammad v. Strassburger*, 526 Pa. 541, 587 A.2d 1346, 1348–49 (1991) (not allowing an attorney malpractice action regarding a settlement to which the client agreed unless the client can show he was fraudulently induced to agree to the settlement because of strong policy considerations in favor of settling and also out of a recognition that litigation is uncertain); *Goodman v. Kotzen*, 436 Pa.Super. 71, 647 A.2d 247, 250 (1994)(ex-

---

8. For the purposes of this discussion, we assume, without deciding, that Barnhart and Ekker owed a duty to Stone at the time she entered into the *Bashor* agreement. However, we do note that Habas was Stone's attorney of record at the time of the agreement, not Barnhart and Ekker. Hall and Evans assert that Barnhart and Ekker aided Habas and thus owed a duty to Stone. Hall and Evans fail to explain how attorneys advising the attorney of record are more responsible for a settlement than is the actual attorney of record. In addition, Hall and Evans fail to explain why they chose not to designate Habas as a nonparty at fault.

9. Notably, to justify its filing to designate Barnhart and Ekker as nonparties at fault (a filing made over eleven months beyond the statutorily prescribed deadline), Hall and Evans claim they could not have known that the failure to appeal amounted to legal malpractice before the Tenth Circuit opinion was issued. This is inconsistent with claiming Barnhart and Ekker committed malpractice by advising Stone not to appeal.

tending *Muhammad* to cases in which a third party alleges the attorney malpractice).

Colorado cases have recognized the uncertainty of litigation. *See Broker House Int'l, Ltd. v. Bendelow,* 952 P.2d 860, 863 (Colo. App.1998) ("[A] pending appeal does not postpone the finality of an otherwise final judgment, and an injury does not disappear because a more final adjudication of the result is sought."); *Scognamillo v. Olsen,* 795 P.2d 1357, 1360 (Colo.App.1990)(noting that in a legal malpractice action, the amount of damages is generally the amount of the judgment entered against the plaintiff in the underlying case). Thus, no attorney can be sure of success on appeal. *See* Mallen, *supra,* § 18.1 (noting that "[n]o matter the effort and diligence, an attorney must cope with the fact that law is not an exact science, and that there may be no attainable degree of knowledge, skill or excellence at which all differences of opinion or doubts concerning a legal question will be resolved").

Litigation is also expensive. The facts of this case illustrate how financial pressures may lead to settlement. Here, Greenwood Village refused to indemnify Stone and refused to post her appeal bond. The Ocrant children had garnished her wages and, in all likelihood, it was financially impossible for Stone to appeal. *See* Minzer, *supra,* § 16.22(1) ("[M]itigation doctrine does not require the injured party to take measures . . . which may lie beyond his financial means.").

The fact that this case involves a *Bashor* agreement strengthens the conclusion that Stone was not required to appeal. This court has expressly approved of the settlement procedure followed by Stone in this case.

*Bashor,* 177 Colo. at 466, 494 P.2d at 1294 (noting that such an agreement is not "champertous, illegal, void, or contrary to public policy"). Simply put, an agreement not to appeal is a critical element of a *Bashor* agreement.

Thus, even assuming that Barnhart and Ekker are responsible for Stone's *Bashor* agreement, such advice is not a breach of the standard of care.

Damages, the second element of a prima facie legal malpractice claim, is also missing here. The Tenth Circuit decision that Hall and Evans claim proved Barnhart and Ekker's negligence did not exonerate Greenwood Village. Rather, the court found error in the admission of evidence and remanded for a new trial. *Stump,* 211 F.3d 527. Stone's participation in the appeal would have done nothing more that increase her damages in the form of additional legal fees and costs of the appeal and of the new trial.

■ Hall and Evans's premise for joining Barnhart and Ekker as nonparties at fault does not rest on a cognizable legal theory. Accordingly, the trial court erred both in designating Barnhart and Ekker as nonparties at fault and in granting the motion to disqualify them.[10]

## III.

In sum, there are strong public policy concerns warranting careful scrutiny of a legal malpractice defendant's attempt to designate opposing counsel as a nonparty at fault.

---

**10.** From the trial court's order granting the motion to disqualify Barnhart and Ekker it appears that the court's decision was influenced not only by Barnhart and Ekker's status as nonparties at fault, but also by Hall and Evans's additional allegations that Barnhart and Ekker interfered with Stone's ability to settle the case with the state court defendants. Although both parties agree that no formal settlement proposal was made, Hall and Evans argue that Barnhart and Ekker's resistance to settle amounts to a "refusal to allow Stone's alleged damages to be mitigated."

The trial court's order notes that evidence of a failure to settle "appears to be admissible at trial." This conclusion, however, compounds the flawed logic of the original decision to designate Barnhart and Ekker as nonparties at fault. A client's failure to settle can never amount to a failure to mitigate. This is so because inherent in settlement is a forfeiture of legal rights and such a forfeiture is not required by a duty to mitigate. *See Gunn Infiniti v. O'Byrne,* 996 S.W.2d 854, 855 (Tex.1999) (stating that a party is not entitled to an instruction on mitigation when offers amounted to "offers of settlement that implicitly required the plaintiff to relinquish his claims").

Thus, to the extent the district court's decision to disqualify Barnhart and Ekker was based on their alleged interference with Stone's ability to settle, its decision was erroneous.

Here, because Hall and Evans have failed to present a cognizable claim on which Barnhart and Ekker's fault can rest, the trial court erred in designating Barnhart and Ekker as nonparties at fault. Accordingly, the subsequent disqualification of Barnhart and Ekker was also an error. We make the rule absolute.

Justice RICE and Justice COATS do not participate.

**v.**

**ADMINISTRATIVE DIRECTOR OF the COURT, State of Hawai'i, Respondent–Appellant.**

**No. 23232.**

Intermediate Court of Appeals of Hawai'i.

May 7, 2001.

Certiorari Granted May 22, 2001.

Motorist appealed Administrative Director of the Court's decision to revoke his driver's license for failure to take a blood or breath test of blood alcohol content. The District Court, First Circuit, reversed. Director appealed. The Intermediate Court of Appeals, Burns, C.J., held that arresting officer's failure to define "alcohol enforcement contact" precluded revocation of motorist's driver's license.

Affirmed.

**1. Automobiles ☞144.1(1.20)**

In driver's license revocation proceedings in which misinformation or insufficient information of the administrative consequences of the failure to take a blood or breath test of blood alcohol content is asserted as a defense, an objective, not subjective, question is presented in regard to the motorist's reliance on such misinformation. HRS § 286–259 (1999).

**2. Automobiles ☞144.1(1.20)**

In driver's license revocation proceedings in which misinformation or insufficient information of the administrative consequences of the failure to take a blood or breath test of blood alcohol content is asserted as a defense, a motorist's reliance on such misinformation is proved when the following conditions are satisfied and not proved when one or more of the conditions are not satisfied: (1) misinformation was given and/or a statute required the information to be given and the information was not given; (2) the misinformation and/or insufficient information was relevant and material to the motorist's decision; (3) the state has not proved that the motorist has admitted that he did not rely on the misinformation and/or insuffi-