Kevin MIRCH, Plaintiff,

v.

Kenneth FRANK, Advanced Physicians Products, Inc., Defendants.

No. CV–N–01–0443–ECR RAM.

United States District Court,
D. Nevada.

Dec. 11, 2003.

Kevin J. Mirch, Mirch & Mirch, Reno, NV, for Plaintiff.

Leigh T. Goddard, McDonald Carano Wilson, and Kent R. Robison, Robison Belaustegui Sharp & Low, Reno, NV, Marilyn Bulloch, Jeffrey A. Dickerson, Judy Frank and Kenneth Frank, Leigh T. Goddard, McDonald Carano Wilson, Reno, NV, and Kent R. Robison, Robison Belaustegui Sharp & Low, Reno, NV, for Advanced Physicians Products, Inc., defendant. Bruce R. Laxalt, Laxalt & Nomura, Ltd., Reno, NV, Gary Hill, Gary J. Hill, Hill & Associates, Santa Barbara, CA, for Leigh Goddard, Pat Lundvall, and Mc Donald Carano Wilson McCune, defendant.

## ORDER

EDWARD C. REED, JR.,District Judge.

The order of the court (# 177) dated October 24, 2003, and filed on October 27, 2003, is amended to read as follows:

This action arises from unpaid attorneys' fees that defendants Dr. Kenneth Frank ("Frank") and Advanced Physicians Products, Inc. ("APPI") allegedly owe plaintiff Kevin J. Mirch ("Mirch") pursuant to a contingency fee agreement. Mirch represented APPI and Frank in a lawsuit, which resulted in a default judgment in favor of APPI, and Mirch claims that APPI and Frank failed to pay Mirch's legal fees.

Defendants Frank and APPI filed a counterclaim (# 113) against Mirch for legal malpractice and for breach of fiduciary duty. Mirch then filed a third party claim (# 116) against the defendants'/counterclaimants' counsel, Pat Lundvall, Leigh Goddard, and McDonald, Carano, Wilson LLP (collectively "McDonald Carano"), alleging indemnity for a "set off" for the amount of damages attributable to the malpractice of McDonald Carano.[1] McDonald Carano then filed a Motion to Dismiss (# 126). Mirch filed an Opposition (# 154) and McDonald Carano Replied (# 156).

## BACKGROUND

The background of this case dates back to 1991 when Universal Sales, Inc. filed a lawsuit against APPI claiming that APPI breached the parties' exclusive marketing agreement. Soon after, Mirch was engaged to represent Dr. Frank and APPI in the lawsuit, *Universal Sales, Inc. v. Advanced Physicians' Prods., Inc., et al.,* CV–N–91–0375–ECR(VPC), (hereinafter the *Universal Sales* case).

The parties dispute the fee agreement for Mirch's representation. Mirch asserts that in accordance with his engagement letter dated January 9, 1992, the parties agreed he would be paid $25 as an hourly fee to defend claims and that he would be entitled to recover 40% of any judgment obtained. Mirch asserts that the parties entered into a written contingency fee agreement memorializing these terms. Defendants deny there was any such agreement either written or otherwise and assert that the parties agreed upon an hourly payment. It is undisputed that defendants would reimburse Mirch for costs incurred.

Although the *Universal Sales* case was scheduled for trial on January 24, 1995,

---

1. Mirch has limited his claim to one of indemnity arising from the portion of the damages attributable to McDonald Carano's alleged malpractice. *See* Mirch's Opposition (# 154), p. 4, ln. 25.

the opposing party, the Brooks, did not appear. A default judgment was entered on behalf of defendants and Stephen Cherniske, who has since assigned his rights to the judgment to defendants. Mirch appeared at a prove-up hearing where he established damages on behalf of defendants. Mirch did not argue for attorneys' fees although the contract might have called for them. Originally, the court accepted Mirch's proposed damage amount and awarded defendants $3,439,868.77. In 2000, upon a motion by the Brooks, the court set aside the judgment as to Dr. and Mrs. Frank and reduced the total award by $1.1 million to exclude damages for emotional distress and personal losses on behalf of the Franks.

In 1999, Dr. Frank engaged a collection agency, RC International, to locate assets of the Brooks to satisfy the *Universal Sales* judgment. To pay for these services, Dr. Frank assigned a portion of his rights to the judgment to RC International. The assignment agreement gave RC International rights to 50% of any assets they recovered. RC International located $1.8 million in assets, which have since been deposited with this court and are the subject of an interpleader action, Case No. CV–N–00–0580–ECR(VPC). Mirch intervened in that action and filed an attorneys' lien.

He also instituted a lawsuit, alleging that Dr. Frank and APPI breached the contingency fee agreement that the parties entered into whereby Mirch would be entitled to 40% of any recovery earned in the *Universal Sales* case by fraudulently assigning Mirch's rights to the proceeds to RC International. Mirch also charges that Judy Frank and defendant Marilyn Bulloch intentionally interfered with this contract by making misrepresentations about the fraudulent assignment. Last, he asserts that the Franks and Bulloch's actions with regard to the assignment were part of a conspiracy to improperly deprive Mirch of his interest in the judgment.

Frank and APPI counterclaimed against Mirch for, amongst other things, legal malpractice. Specifically, the counterclaimants allege that Mirch: (a) failed to reasonably prepare for the damages claim at the prove-up hearing, (b) failed to request attorneys' fees, (c) failed to keep his client reasonably informed, (d) abandoned his clients and failed to collect on the judgment, (e) represented a client against counter-claimants in substantially the same matter, (f) claimed a contingency fee when the parties never agreed to such a fee. Counterclaim at ¶ 20.

Mirch responded to the counterclaim by filing a third party claim against the counterclaimants' attorneys, McDonald Carano. Mirch's third party claim against McDonald Carano can be pared down to a claim for indemnity or contribution for any damage caused by malpractice that McDonald Carano might have committed in representing Mirch's former clients, Frank and APPI.[2] In essence, Mirch is claiming that McDonald Carano's malpractice exacerbated the injuries suffered by Frank and APPI, and, if Mirch has to pay any damages, McDonald Carano should bear its share of the costs. McDonald Carano responds that this third party claim is not allowed under Nevada law.

## STANDARDS—Motion to Dismiss under 12(b)(6)

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) will only be granted if it appears beyond doubt that "plaintiff can prove no

---

**2.** Although Mirch uses the phrase "indemnity," the court will interpret Mirch's claim as one for either contribution or indemnity because different courts have used the terms interchangeably and the relief—a "set off" of damages—requested by Mirch is probably best analyzed as an action in contribution.

set of facts in support of his claim which would entitle him to relief." *Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. *In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1403 (9th Cir.1996). However, although courts generally assume the facts alleged are true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal for failure to state a claim is proper only if it is clear that no relief may be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir.2000). Review is limited to the contents of the complaint; if matters outside the pleadings are submitted, the motion to dismiss may be treated as one for summary judgment if the district court relies on the materials. *Anderson v. Angelone,* 86 F.3d 932, 934 (9th Cir.1996); *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381, 385 (9th Cir. 1995).

On a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quotation omitted). However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *In re Stac Elecs. Sec. Litig.,* 89 F.3d at 1403.

## ANALYSIS

In a diversity action, the district court should apply the substantive law of the forum state. *St. Paul Fire & Marine Ins. Co. v. Weiner,* 606 F.2d 864, 867 (9th Cir.1979). In interpreting state law, federal courts are bound by the pronouncements of the state's highest court. *Dyack v. Commonwealth of N. Mariana Islands,* 317 F.3d 1030, 1034 (9th Cir.2003). In the absence of a controlling state Supreme Court decision, a federal court applying state law must apply the law as it believes the state Supreme Court would apply it. *Gravquick A/S v. Trimble Navigation Intn'l. Ltd.,* 323 F.3d 1219, 1222 (9th Cir. 2003). In other words, a federal district court in diversity cases must predict how the Nevada Supreme Court would decide unresolved issues of state law, using statutes and decisions from other jurisdictions as interpretive aids. *Id.* Therefore, since Nevada is the forum state, this court must apply Nevada substantive law as it predicts the Nevada Supreme Court would apply it.

The main issue in this motion to dismiss is whether an attorney defending a malpractice suit should be permitted to implead his former client's current counsel in order to seek indemnity or contribution for the current counsel's alleged malpractice. As counsel for both parties have ably pointed out, although a majority of states do not allow such a suit, the issue is unsettled in Nevada and many states have split on its resolution. *See Stone v. Satriana,* 41 P.3d 705, 712 (Colo.2002) (en banc) (not allowing third party suit because successor counsel owed no duty to former counsel); *Holland v. Thacher,* 199 Cal.App.3d 924, 245 Cal.Rptr. 247 (1988) (rejecting a case-by-case approach and foreclosing third-party action against successor attorney); *Goldfisher v. Superior Ct.,* 133 Cal.App.3d 12, 183 Cal.Rptr. 609 (1982) (not allowing on public policy grounds); *Waldman v. Levine,* 544 A.2d 683 (D.C.1988) (not allowing on public policy grounds); *Hughes v. Housley,* 599 P.2d 1250 (Utah 1979) (finding successor counsel had no duty to for-

mer counsel and not allowing suit on public policy grounds); *Roberts v. Heilgeist*, 124 Ill.App.3d 1082, 80 Ill.Dec. 546, 465 N.E.2d 658 (1984) (not allowing suit for case specific reasons but expressing approval of public policy rationale disallowing suit); *Melrose Floor Co. v. Lechner*, 435 N.W.2d 90 (Minn.Ct.App.1989) (not allowing suit on public policy grounds); *Olds v. Donnelly*, 150 N.J. 424, 696 A.2d 633 (1997) (not allowing impleader but exempting claim from preclusion rules to allow subsequent, separate suit against successor attorney); *but see Parler & Wobber v. Miles & Stockbridge, P.C.*, 359 Md. 671, 756 A.2d 526 (2000) (discussing competing public policies and permitting suit); *Goran v. Glieberman*, 276 Ill.App.3d 590, 213 Ill.Dec. 426, 659 N.E.2d 56 (1995) (allowing suit because alternative would leave successor attorney free from liability); *Pappas v. Holloway*, 114 Wash.2d 198, 787 P.2d 30 (1990) (en banc) (implicitly approving of third party practice in attorney malpractice situation without policy discussion); *Schauer v. Joyce*, 54 N.Y.2d 1, 444 N.Y.S.2d 564, 429 N.E.2d 83 (1981) (holding that attorney's third party claim against successor attorney is sufficient to withstand motion to dismiss without discussion of policy issues); *Maddocks v. Ricker*, 403 Mass. 592, 531 N.E.2d 583 (1988) (allowing claim for contribution against successor attorney because alternative would leave successor counsel free from liability); *compare Parker v. Morton*, 117 Cal.App.3d 751, 173 Cal.Rptr. 197 (1981) (allowing suit if attorney malpractice constituted non-discretionary function as opposed to a choice of reasonable alternatives), *with Austin v. Superior Ct.*, 72 Cal.App.4th 1126, 85 Cal. Rptr.2d 644 (1999) (calling *Parker* into doubt and not allowing suit).

While the Federal Rules of Civil Procedure expressly authorize a plaintiff sued on a counterclaim to implead joint tortfeasors, *see* Fed.R.Civ.P. 14(b); *see also Finley v. U.S.*, 490 U.S. 545, 560, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (Stevens, J., dissenting), the special policy considerations present in the attorney-client relationship and the possibility of bad faith allegations present a substantive state interest in whether a former attorney can implead a successor attorney.

It is a close issue under Nevada state substantive law whether a successor attorney is a joint tortfeasor with the former attorney, and if so, whether the former attorney can implead the successor attorney given the public policy considerations inherent in the attorney-client relationship. The split in state law warrants a closer analysis of this issue in order to predict which line of reasoning the Nevada Supreme Court would adopt.

A few public policy issues predominate. First, the attorney accused of malpractice can use impleader as a nefarious litigation tactic by spreading chaos in the opposing camp and creating a conflict of interest that would force the client's current counsel to withdraw or be disqualified. *Stone v. Satriana*, 41 P.3d 705, 709 (Colo.2002) (en banc). Second, such an action would interfere with the attorney-client confidences of the client. *Id.* Third, the use of impleader in this circumstance could interfere with the ability of the client to pursue such a malpractice claim as a successor attorney, wary of a potential impleader claim for malpractice brought by the former attorney, might not act in the best interests of the client in pursuing the claim. *Id.* This might have a chilling effect on malpractice claims. *Id.* Fourth, the attorney's duty runs to the client, and not the former attorney, and to subject the successor attorney to a suit by the former attorney would force the successor attorney to confront "potential conflicts of interest in trying to serve two masters." *Hughes v. Housley*, 599 P.2d 1250, 1254 (Utah 1979).

There are also policy concerns that weigh in favor of allowing former counsel to implead successor counsel. First, a successor counsel could escape liability if a former attorney was prohibited from using impleader to hold the successor attorney accountable for malpractice. *Parler & Wobber v. Miles & Stockbridge, P.C.*, 359 Md. 671, 756 A.2d 526, 539 (2000). Second, it would be unfair to allow the client to sue former counsel for malpractice and yet, at the same time, claim attorney-client privilege with the successor counsel, thereby limiting former counsel's access to relevant evidence. *Id.* at 538–39. Third, the successor counsel's "position of trust with and influence over the client . . . could create a situation ripe for mischief and manipulation" if the successor counsel fails to disclose his own negligence to the client. *Id.* at 544. Finally, disallowing the use of impleader could dull the successor counsel's incentives to act as carefully and diligently for the client since the successor counsel would be less likely to face malpractice liability after replacing former counsel.

█ Although the policy issues cut both ways, we believe that the Nevada Supreme Court would adopt the view held by a majority of jurisdictions and the Restatement. The Restatement (Third) of the Law Governing Lawyers § 53(i) (2000) strikes a balance between the competing policy interests by stating that the former attorney may not seek contribution from the successor attorney in the same action, but may seek to reduce the damages by the portion of the liability attributable to the successor lawyer. Specifically, the Restatement expresses that:

"[t]he first lawyer, however, may not seek contribution or indemnity from the successor lawyer in the same action in which the successor lawyer represents the client, for that would allow the first lawyer to create or exacerbate a conflict of interest for the second lawyer and force withdrawal of the second lawyer from the action. The first lawyer may, however, dispute liability in the negligence or fiduciary breach action for the portion of damages caused by the second lawyer on the ground that the conditions of Restatement Second, Torts § 447 are not satisfied. The client may then choose whether to accept the possibility of such a reduction in damages or to assert a second claim against successor counsel, with the resultant necessity of retaining a third lawyer to proceed against the first two."

Restatement (Third) of the Law Governing Lawyers § 53(i) (2000).

█ The court finds the rationale of the Restatement to be persuasive under the facts of this case. McDonald Carano did not owe a duty to Mirch to mitigate Mirch's malpractice damages nor was Mirch in privity with McDonald Carano. The successor lawyer should not be required to face a potential conflict between the course "which is in his client's best interest and the course which would minimize his exposure to the cross-complaint" of the former lawyer. *Goldfisher v. Superior Ct.*, 183 Cal.Rptr. at 612. As the court expressed in *Goldfisher*, "to encourage claims of indemnification where two lawyers successively represent the same client is not for the benefit of the client" and these "differences between lawyer and client respecting malpractice should be limited to themselves." *Id.* at 615.

The view offered by the Restatement closely comports to that of California and would allow Mirch to offer McDonald Carano's malpractice as an affirmative defense in order to reduce his liability for damages. *Id.; Holland*, 245 Cal.Rptr. at 250. If Mirch presented a valid affirmative defense of malpractice on the part of McDonald Carano, then it would be up to

APPI and Frank to decide whether to join McDonald Carano or risk losing that portion of its claimed damages. This course of action would place the course of the litigation and the ultimate waiver of attorney-client privilege in the hands of the aggrieved client. *Holland,* 245 Cal.Rptr. at 251 (putting the client to an election to either waive the attorney-client privilege, sue the successor counsel, or risk losing a portion of his damages when presented with an affirmative defense of successor counsel's malpractice). The court finds that Nevada's Supreme Court would decide that the client, and not the former attorney, should decide who to sue for malpractice.[3]

Under the facts of this specific case, it is worth noting that the policies favoring such a suit—allowing successor counsel to escape liability for even gross malpractice—do not seem to be present in this case. The complaint does not allege actionable malpractice that McDonald Carano breached a "specific duty of professional practice." *Melrose,* 435 N.W.2d at 92. In fact, it appears that Mirch is alleging that McDonald Carano simply failed to exercise proper judgment, which is not actionable malpractice. *Id.* (citing *Rosner v. Paley,* 65 N.Y.2d 736, 492 N.Y.S.2d 13, 481 N.E.2d 553 (1985)). Thus, even if the court found that the Nevada Supreme Court would allow the use of impleader against a successor attorney, Mirch's third-party complaint has not stated a sufficient case of malpractice against McDonald Carano to override the public policy concerns previously highlighted.

■ Under Nevada law, the required elements of malpractice are: (1) an attorney-client relationship; (2) a duty owed to the client by the attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity possess in exercis-

ing and performing the tasks which they undertake; (3) a breach of that duty; (4) the breach being the proximate cause of client's damages; and (5) actual loss or damage resulting from the negligence. *Day v. Zubel,* 112 Nev. 972, 976, 922 P.2d 536, 538 (1996). Even those states that allow the use of impleader against successor attorneys do so with an eye towards taking "practical judicial methods to balance the contribution right against the attorney-client privilege." *Parler & Wobber,* 756 A.2d at 540; *Maddocks,* 531 N.E.2d at 589 (advising courts to rule on the impleader issue early to minimize conflicts "if the merits of the claim for contribution can be addressed and ruled on immediately").

Upon closer examination of Mirch's claims, it does not appear that McDonald Carano's alleged malpractice was sufficiently related to Mirch's alleged malpractice for McDonald Carano to have exacerbated the damages that Mirch's malpractice allegedly caused. *See Roberts v. Heilgeist,* 80 Ill.Dec. 546, 465 N.E.2d at 661–62 (finding that contribution requires a common injury and alleged malpractice of successor counsel did not cause same injury). Mirch has failed to properly allege a cognizable breach of a duty or relate any breach of duty to a proximate cause of a common injury to Frank or APPI.

Frank and APPI alleged that Mirch's malpractice involved Mirch's conduct both before and after the *Universal Sales* case, including failing to prepare for the damage prove-up hearing, failing to request attorneys' fees, and failing to keep his clients reasonably informed. The damages flowing from such malpractice will likely involve some portion of damages—including attorneys' fees not petitioned for—that Mirch's malpractice cost Frank and APPI

**3.** We do not comment on whether Mirch can later bring a separate action for contribution under Nevada Revised Statute Section 17.285.

during the *Universal Sales* case as well as possibly mitigating the attorneys' fees that Frank and APPI allegedly owe Mirch. Mirch is apparently alleging that McDonald Carano committed malpractice by advising Frank and APPI to sue Mirch for malpractice, thereby subjecting the *Universal Sales* damage award to collateral attack.

However, McDonald Carano's duty runs to its client and not Mirch. *Day,* 112 Nev. at 976, 922 P.2d at 538. If McDonald Carano has a choice between alternatives, then McDonald Carano is under no duty to Mirch to lessen the damages resulting from predecessor counsel's negligence. *Waldman v. Levine,* 544 A.2d at 692. The successor attorney must take the course of conduct that is in the client's best interest. *Id.* There is no indication that McDonald Carano breached a duty to its client by suing Mirch for malpractice or advising Frank and APPI to waive the attorney client privilege. Just because McDonald Carano is successor counsel should not automatically subject the McDonald Carano defendants to a claim for contribution.

Furthermore, it is not clear how McDonald Carano's alleged malpractice could have contributed to the damages deriving from Mirch's alleged malpractice. Mirch has alleged no breach of duty to Frank or APPI that would exacerbate the damages proximately caused by Mirch's malpractice, which involved Mirch's lack of preparation at the initial damage prove-up hearing. McDonald Carano was under no duty to its clients to seek attorneys' fees for Mirch or to overcome Mirch's alleged lack of preparation at the prove-up hearing. This is especially true with regard to the attorneys' fees, which Mirch himself failed to seek in the first instance.

Also, to the extent Mirch is claiming that McDonald Carano took actions that made Mirch's potential malpractice liability greater—in essence, by waiving attorney client privilege and alleging misconduct by Mirch that might have subjected the damage judgment to attack—this contention does not state a claim. It does not appear that Mirch is claiming that McDonald Carano breached any duty to Frank and APPI. Therefore, even taking the allegations in the third party complaint as true, Mirch has failed to state a cognizable claim that McDonald Carano has committed malpractice against its clients, and, therefore, his contribution or indemnity claim against McDonald Carano fails to state a claim under which relief can be granted.

In conclusion, the court finds that the Nevada Supreme Court would not allow a former attorney to file a third-party complaint for contribution or indemnity against his successor attorney in a malpractice action. Mirch's claims also fail to state a claim under which relief can be granted because he does not allege that McDonald Carano breached a duty to Frank and APPI that proximately caused an increase in Mirch's potential malpractice damages. McDonald Carano had a duty to work in the best interests of its clients. Failing to mitigate Mirch's malpractice liability does not constitute malpractice as to Frank and APPI.

***THEREFORE, IT IS HEREBY ORDERED THAT,*** as addressed above, McDonald Carano's Motion to Dismiss (# 126) is **GRANTED**. Mirch's third party complaint against McDonald, Carano, Wilson LLP, Pat Lundvall, and Leigh Goddard is dismissed.

***IT IS FURTHER ORDERED THAT*** the hearing set for Motion to Dismiss (# 126) on November 5, 2003, at 10:00 a.m. is **VACATED**.