**CITY AND COUNTY OF DENVER, a Municipal corporation and Public Safety Review Commission, a Commission of the City and County of Denver, Plaintiffs–Appellees,**

v.

**Jerome POWELL and Scott Blatnik, Defendants–Appellants.**

No. 97CA1662.

Colorado Court of Appeals, Div. II.

Sept. 3, 1998.

As Modified on Denial of Rehearing Nov. 13, 1998.

Daniel E. Muse, City Attorney, Stan M. Sharoff, City Attorney, Denver, for Plaintiffs–Appellees.

Hamilton and Faatz, P.C., Gregory W. Smith, Michael E. Gurley, Cynthia Tread-

well–Miller, Bruno, Bruno & Colin, P.C., David J. Bruno, Christina M. Habas, Janice H. Hollenbeck, Denver, for Defendants–Appellants and Amicus Curiae National Association of Police Organizations and Amicus Curiae Fraternal Order of Police.

Stephen R. McSpadden, Washington, D.C., for Amicus Curiae National Association of Police Organizations.

Opinion by Judge NEY.

Defendants, Denver police officers Jerome Powell and Scott Blatnik, appeal the trial court's declaratory judgment holding that the Denver Public Safety Review Commission (PSRC) can compel defendants' statements relating to complaints of use of excessive force filed against them by citizens. We reverse.

Citizens filed complaints with the Denver Police Department (department) against defendants in 1995. Defendant Powell was accused of wrongfully hitting and pushing into a wall a man being arrested for drunk driving, and defendant Blatnik was accused of wrongfully fatally shooting a man while responding to a call for police assistance.

The department conducted investigations into both complaints through its internal affairs division. Consistent with department policy, the department also conducted a police shooting investigation of defendant Blatnik, which included the videotaping of witness and officer statements just hours after the shooting. Based on its internal investigations, the department declined to take any administrative disciplinary action against either defendant.

The Denver District Attorney's Office also reviewed both incidents and declined to institute criminal charges against defendants. In the case of defendant Blatnik, the District Attorney's Office issued a decision letter stating that his use of deadly force was statutorily justified and no criminal prosecution would be undertaken against him.

The complaining citizens requested that the PSRC, a citizens' group created by city ordinance to review conduct of police officers upon request, examine defendants' use of force to determine whether it was justified.

The PSRC subpoenaed the officers to appear for questioning.

On January 7, 1997, both defendants appeared before the PSRC. Defendant Blatnik asserted his Fifth Amendment privilege against self-incrimination and declined to answer any questions. Defendant Powell answered some general questions, but also asserted his Fifth Amendment privilege and declined to answer any questions relating to the excessive force claim.

On January 26, 1997, plaintiffs sought a declaratory judgment and injunctive relief ordering defendants to testify before the PSRC. Defendant Powell responded and filed a motion to dismiss for failure to state a claim, and defendant Blatnik answered and asserted a counterclaim indemnifying him for attorney fees and costs.

Plaintiffs opposed defendant Powell's motion to dismiss, and filed a motion for summary judgment against defendant Blatnik. Defendant Blatnik sought summary judgment on plaintiffs' claims and his counterclaim.

On August 8, 1997, the trial court granted the plaintiffs' motions and issued its declaratory judgment holding that defendants could not refuse to answer questions before the PSRC on the basis of their Fifth Amendment privilege. The trial court certified the declaratory judgment for appeal pursuant to C.R.C.P. 54(b).

I.

Defendants assert that the trial court erred in finding that they could be compelled to answer the PSRC's questions over the assertion of their Fifth Amendment privilege not to incriminate themselves. We agree.

Because the issues on appeal are questions of law, we will review them *de novo*. *See People v. Sapp*, 934 P.2d 1367 (Colo.1997).

■ The Fifth Amendment protects an individual not only against being involuntarily called as a witness against him or herself in a criminal prosecution, but also grants a person the privilege not to answer official questions in any other proceeding, civil or criminal, formal or informal, where the answers

might tend to be self-incriminatory in future criminal proceedings. *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).

■ The Fifth Amendment privilege is not self-executing. If an individual confronted with questions reasonably expected to elicit incriminating answers chooses to respond voluntarily without asserting the Fifth Amendment privilege, the responses may be used against such person in a subsequent criminal proceeding. *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984).

■ A public employee who is compelled to provide incriminating statements by threat of termination for not testifying has not voluntarily waived the privilege against self-incrimination. Therefore, the compelled statements cannot be used against the individual in subsequent criminal proceedings. *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

■ Statements are compelled by threat of discharge of employment when: (1) an individual subjectively believes that he or she will be terminated from employment for asserting the Fifth Amendment privilege; and (2) that belief is objectively reasonable under the circumstances. *People v. Sapp, supra.*

■ For a belief to be objectively reasonable, it must stem from some significant coercive action on the part of the state, such as a statute, policy, rule, or ordinance requiring the individual to respond to questioning or face termination. The coercive action of the state must surpass the general obligation imposed on a witness to give truthful testimony. *People v. Sapp, supra.*

Here, defendants refused to answer the PSRC's questions, asserting their Fifth Amendment privilege not to incriminate themselves. They argue that the PSRC cannot compel them to testify in contravention of their privilege against self-incrimination because the PSRC is not their employer and cannot threaten them with penalties of discharge or sanctions; the PSRC has no power to grant them immunity from prosecution; the PSRC's subpoena does not rise to the level of coercive state action; and the hearing before the PSRC is not an administrative disciplinary hearing because the PSRC is without power to impose any discipline.

Therefore, defendants argue that their responses to the PSRC's questions would not be considered as compelled, but would be considered as voluntary and, thus, would constitute a waiver of their Fifth Amendment privilege such that those responses could be used against them in subsequent criminal actions.

### A.

Defendants' first argue that the PSRC cannot compel statements from defendants because it is not their employer, it has no authority to discipline them for asserting their Fifth Amendment privilege, and any statements they give would be voluntary and constitute a waiver of their Fifth Amendment rights. We agree.

■ Statements are compelled by threat of discharge of employment when an individual believes that he or she will be terminated for asserting a Fifth Amendment privilege and that belief is objectively reasonable under the circumstances. For a law enforcement officer's belief that he or she may be discharged to be considered objectively reasonable, it must be supported by some demonstrable action of the state. Ordinary job pressures, such as the subjective belief that discipline or discharge for insubordination is possible, are insufficient to support an objectively reasonable expectation of discharge. *People v. Sapp, supra.*

■ Public employers may compel statements from their employees when they are narrowly related to the performance of their duties, do not compel a waiver of their Fifth Amendment privilege, and are not used against the employee in later criminal proceedings. *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968).

The PSRC is not defendants' employer. It is a body composed of seven residents of the City and County of Denver appointed by the mayor to make recommendations for changes in policy and procedure after review of citi-

zen complaints. Denver Revised Municipal Code § 2–248.

When a citizen files a complaint with the PSRC, it is empowered to review and investigate that complaint. Denver Revised Municipal Code §§ 2–248(2) and 2–248(3). If the PSRC finds the complaint to be unfounded, exonerated, or not sustained, it can make recommendations to the chief of police and director of corrections regarding the policies and procedures of the police department and the outcome of the complaint. Denver Revised Municipal Code § 2–250(k).

However, if the PSRC makes a finding that a citizen complaint is sustained, it may only recommend policy or procedure changes. It is specifically excluded from the discipline process: "[T]he [PSRC] shall not provide recommendations regarding the discipline or penalties imposed on that specific complaint to the police department or the sheriff's department." Denver Revised Municipal Code § 2–250(k). The authority to discharge, discipline, or impose sanctions on police officers is reserved for the chief of police, director of corrections, and manager of safety. Denver Revised Municipal Code § 2–251.

■ Plaintiffs rely on *Pirozzi v. New York*, 950 F.Supp. 90 (S.D.N.Y.1996), *aff'd*, 117 F.3d 722 (2d Cir.1997), to support their assertions that a police citizen review board not only has the authority to compel statements from police officers, but also to provide transcripts of that testimony to a district attorney without violating the officers' Fifth Amendment privilege. However, the PSRC's lack of involvement in disciplinary proceedings distinguishes this situation from *Pirozzi* because there the New York police citizen review board is an integral part of the discipline process and officers are compelled by specific police department regulations to give a statement to that review board under threat of termination.

Here, defendants properly do not have a subjective belief that they could be discharged for not testifying before the PSRC, and there is no objective reason, in the form of coercive state action, to imply that they could be discharged for not testifying.

Because the PSRC is not defendants' employer and cannot compel them to testify, we agree with defendants that any statements they might make would be voluntary and would, therefore, effect a waiver of their Fifth Amendment rights such that their statements could be used against them in a subsequent criminal proceeding.

### B.

Defendants also argue that the PSRC cannot compel their statements because it does not have the authority to grant use and derivative immunity. We agree.

■ An individual may be compelled to testify as to matters that may tend to be self-incriminatory when use and derivative use immunity has been conferred upon the statements made. With immunity, the individual's compelled statements cannot be used in any criminal prosecution. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

The PSRC does not have authority to grant immunity of any kind to the witnesses who testify before it. *See* Denver Revised Municipal Code § 2–240, et seq. Rather, § 13–90–118, C.R.S.1997, gives authority for use and derivative use immunity in specific instances: where the proceedings are before or ancillary to a court or grand jury; the immunity is requested by a district attorney, attorney general, or special prosecutor; and the immunity is ordered by a district court.

Here, the proceedings are before a citizen group; no immunity has been requested by a district attorney, attorney general, or special prosecutor; and the court has not ordered immunity for defendants' statements.

Although the Civil Service Commission, which is the authority charged with all personnel matters involving police officers, may grant immunity under the Denver Charter for statements made to the department during internal investigations, no similar provision exists for the PSRC. *See* Denver City Charter § C5.78–1, 78–2.

■ We therefore conclude that, because the PSRC cannot grant use and derivative use immunity to defendants, the PSRC can-

not compel them to make statements when they assert their Fifth Amendment privilege.

### C.

The PSRC asserts that its subpoena power in and of itself is sufficient to compel statements from defendants. We disagree.

■ The general obligation to appear and answer questions truthfully pursuant to PSRC's subpoena does not convert otherwise voluntary statements into compelled statements. *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); *People v. Sapp, supra.*

Although the PSRC is authorized to issue subpoenas and enforce them through a county court proceeding for contempt, this authority does not translate into an ability to coerce a compelled statement. *See People v. Razatos,* 699 P.2d 970 (Colo.1985)(county court may punish a witness for contempt only if the witness exhibits a contumacious failure to comply with an order of the court, and a valid exercise of the privilege of self-incrimination does not rise to the level of contempt). Denver City Charter § C6.12; Denver Revised Municipal Code § 2–243;

■ We therefore conclude that in any appearance before the PSRC, defendants are entitled to assert their Fifth Amendment privilege and decline to answer questions submitted to them where their answers might tend to incriminate them.

The declaratory judgment is reversed and the cause is remanded to the district court for further proceedings for consideration of claims by defendants Powell and Blatnik for attorney's fees and costs.

CRISWELL and BRIGGS, JJ., concur.