Raquel BACKSTREET, Plaintiff–Appellant,

v.

HOPP & FLESCH, LLC and Kevin C. Flesch, in his corporate and individual capacities, Defendants–Appellees.

No. 03CA1522.

Colorado Court of Appeals, Div. IV.

Sept. 9, 2004.

Certiorari Granted Feb. 22, 2005.

LaFond & Sweeney, LLC, Richard C. La-Fond, Denver, Colorado; Sheila H. Meer, Denver, Colorado, for Plaintiff–Appellant.

Wesley W. Hoyt, Englewood, Colorado, for Defendant–Appellee Hopp & Flesch, LLC.

Law Office of Kevin C. Flesch, LLC, Kevin C. Flesch, Englewood, Colorado, for Defendant–Appellee Kevin C. Flesch.

Opinion by Judge VOGT.

In this attorney malpractice action, plaintiff, Raquel Backstreet, appeals the trial court's summary judgment dismissing her claims against defendants, Hopp & Flesch, LLC, and Kevin C. Flesch. We affirm in part, reverse in part, and remand for further proceedings.

Plaintiff was employed by the Arapahoe County Sheriff's Department as a licensed practical nurse at the county detention center. In May 2000, she was informed that she was being suspended without pay and would face criminal charges for having allegedly altered medical records. Plaintiff retained defendant Flesch and his law firm to represent her.

Plaintiff was served with a criminal complaint alleging forgery, tampering with evidence, and official misconduct. Meanwhile, the sheriff's department sought to interview

her about the incident as part of its internal administrative investigation. Defendant Flesch advised plaintiff not to participate in any interview as long as the criminal charges against her were pending, and plaintiff did as he advised.

The criminal charges against plaintiff were subsequently dismissed, but she was recommended for termination from her employment because of her refusal to cooperate in the sheriff's internal investigation. Through new counsel, plaintiff appealed that recommendation. She was reinstated, but forfeited thirty days of back pay for failing to participate in the investigation.

Plaintiff then commenced this action, seeking damages on theories of professional negligence, negligence, intentional breach of contract, and breach of contract. Defendants moved for summary judgment, arguing that, as a matter of law, defendant Flesch's advice to plaintiff was not below the standard of care.

The trial court agreed. Treating defendants' motion as a request for determination of a question of law pursuant to C.R.C.P. 56(h), the court concluded that any statements plaintiff would have given in the department's internal investigation would not be deemed the result of coercive state action within the meaning of *People v. Sapp,* 934 P.2d 1367 (Colo.1997), and thus would be admissible in any subsequent criminal trial. Therefore, plaintiff's attorney did not breach a duty of care by advising her not to participate in the investigation.

In a subsequent order, the court ruled that all plaintiff's claims would be dismissed because all were predicated on the theory that defendant Flesch was derelict in advising plaintiff to remain silent during the pendency of the criminal proceedings.

## I.

 Plaintiff contends the trial court erred in ruling as a matter of law that statements made to her employer could have been used against her in her criminal proceedings and that her lawyer's advice to refuse to make such statements was therefore not deficient. We agree.

 We review de novo a trial court's entry of summary judgment based on its determination of a question of law pursuant to C.R.C.P. 56(h). Summary judgment is appropriate only if the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *West Elk Ranch, L.L.C. v. United States,* 65 P.3d 479 (Colo.2002); *Quinn v. Castle Park Ranch Property Owners Ass'n,* 77 P.3d 823 (Colo.App.2003).

 To establish a legal malpractice claim founded in negligence, three elements must be proved: (1) the attorney owed a duty of care to the plaintiff, (2) the attorney breached that duty, and (3) the attorney proximately caused damage to the plaintiff. *Stone v. Satriana,* 41 P.3d 705 (Colo.2002); *Brown v. Silvern,* 45 P.3d 749 (Colo.App.2001).

 The measure of the duty owed by an attorney to his or her client is that the attorney must employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession at the time the task is undertaken. Expert testimony is generally necessary to establish the standards of acceptable professional conduct, the deviation from which would constitute legal malpractice. However, where the facts are undisputed, whether an attorney's advice falls below the standard of care may in certain circumstances be determined as a matter of law. *See Stone v. Satriana, supra; McCafferty v. Musat,* 817 P.2d 1039 (Colo.App.1990).

In *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the Supreme Court held that statements given by police officers who faced the choice either to incriminate themselves or to forfeit their jobs were not voluntary but coerced, and thus were subject to suppression under the Fifth and Fourteenth Amendments.

Applying *Garrity* and its progeny, the Colorado Supreme Court, in *People v. Sapp, supra,* adopted a two-prong test to determine whether a public employee's statements were compelled by a threat of discharge from employment: (1) the employee must subjectively believe that he or she will be fired for asserting the Fifth Amendment privilege against self-incrimination, and (2) that belief

must be objectively reasonable under the circumstances. In order for the employee's belief to be objectively reasonable, the belief must result from some significant coercive action by the state.

The trial court in this case applied the *Sapp* analysis and concluded that plaintiff's belief that she would be fired or face substantial specific disciplinary action if she did not give a statement was not objectively reasonable because it was not based on significant coercive action by the sheriff's department. Although plaintiff had received an advisement that refusal to answer questions would subject her to "administrative charges which could result in [her] dismissal from the Sheriff's Office," the court found that advisement insufficient, under *Sapp*, to constitute significant coercive action by the state. Therefore, because the statements were not coerced and could have been used against plaintiff in a criminal trial, the attorney's advice did not fall below the standard of care.

In so concluding, the trial court overlooked a significant fact that distinguishes this case from *Sapp* and *Garrity* and, in our view, requires a contrary conclusion.

Unlike the employees in *Sapp* and *Garrity,* plaintiff was expressly promised that her statements could not be used against her in any subsequent criminal proceeding. She was given a written "Arapahoe County Sheriff's Office Internal Investigation Advisement," which, using language mandated by the department's policy manual, stated:

> I wish to advise you that you are being questioned as part of an official administrative investigation of the Sheriff's Office. You will be asked questions specifically, directly and narrowly related to the performance of your official duties or fitness for office. You are entitled to all rights and privileges guaranteed by the laws and the Constitution of this State and the Constitution of the United States, including the right not to be compelled to incriminate yourself in a criminal matter, however, this is not a criminal investigation. I further wish to advise you that if you refuse to testify or to answer questions relating to the performance of your official duties or fitness for duty, you will be subject to administrative charges which could result in your dismissal from the Sheriff's Office. *If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding.* However, these statements and evidence gained there from [sic] may be used against you in relation to subsequent sheriff's office administrative violations.

(Emphasis added.)

When asked by the trial court about the effect on the *Sapp* inquiry of the language underlined above, defendants responded that the sheriff's office had no authority to make such a promise. They again suggest on appeal that the language is of no effect because the sheriff's office did not offer plaintiff witness immunity under § 13–90–118, C.R.S. 2003, which sets forth procedures for granting immunity to a witness who asserts the privilege against self-incrimination as a basis for refusing to testify. However, while the sheriff's office is not among the entities or individuals authorized under that statute to offer immunity, that does not end the inquiry.

■ Under Colorado law, a promise of use immunity by a government official with apparent authority to bind the government, even an official not among those listed in § 13–90–118, is enforceable against the government if a criminal defendant has detrimentally relied on the promise. *See People v. Romero,* 745 P.2d 1003 (Colo.1987)(promises by investigators and community corrections director not to use statements made by defendant during hypnosis sessions were enforceable and precluded use of statements and evidence derived from them in criminal proceedings); *People v. Manning,* 672 P.2d 499 (Colo.1983)(detective had apparent authority to bind government, even though he was not authorized under § 13–90–118 to promise immunity; thus, defendant was entitled to suppression of her statements and all evidence derived therefrom); *People v. Fisher,* 657 P.2d 922 (Colo.1983)(upholding suppression of videotaped interview where detective had promised that interview would not be used against defendant and defendant took detrimental action in reasonable reliance on promise); *cf. City & County of*

*Denver v. Powell,* 969 P.2d 776 (Colo.App. 1998) (public safety review commission, a citizen group that was not police officers' employer and had no statutory authority to grant immunity, could not compel officers to answer questions that might tend to incriminate them).

Unlike citizen groups or nongovernmental employers, the Arapahoe County Sheriff's Department, like the individuals who made promises in *Manning, Fisher,* and *Romero,* had sufficient apparent authority to make its promise of use immunity binding on the government if plaintiff detrimentally relied on the promise by participating in the sheriff's internal investigation.

A grant of immunity for statements made during an internal investigation eliminates the concern expressed in *Garrity* about statements made by public employees under the threat of discharge. Thus, the Supreme Court held, in *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), that, if a state offers public employees or contractors immunity sufficient to supplant their Fifth Amendment privilege, it may insist that such individuals either answer questions under oath or suffer loss of employment. *See also Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)(immunity from use and derivative use is coextensive with scope of Fifth Amendment privilege against self-incrimination and is therefore sufficient to compel testimony over a claim of privilege).

Other courts have similarly held that public employees who are granted use immunity, even by an entity lacking statutory authority to confer immunity, are no longer presented with the choice condemned in *Garrity* and thus may be required to answer questions from their employer or face termination. *See Erwin v. Price,* 778 F.2d 668 (11th Cir.1985)(police officer who had received assurances that nothing stated during internal investigation could be used against him in criminal proceeding could lawfully be disciplined for refusing to answer questions, even though he had not received a statutory grant of use immunity or a binding agreement from the district attorney not to use his statements in a criminal prosecution); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation,* 426 F.2d 619 (2d Cir.1970)(even absent a statute authorizing city to confer immunity, where city promised its employees that their statements could not be used in subsequent criminal prosecutions, it could dismiss employees upon their refusal to answer questions).

In *Weston v. United States Department of Housing & Urban Development,* 724 F.2d 943 (Fed.Cir.1983), the court upheld the termination of a federal employee who, although she had received a *Garrity* advisement granting her use immunity in language substantially similar to that used in this case, nevertheless refused to cooperate in an internal agency investigation. In so holding, the court rejected the employee's argument that termination was unwarranted because her refusal to cooperate was done on the advice of counsel.

Under the authorities set forth above, the sheriff's promise to plaintiff that her statements could not be used against her in subsequent criminal proceedings was enforceable, and the sheriff was entitled to terminate plaintiff's employment if she refused to cooperate in the internal investigation after receiving that promise. Thus, the trial court erred in concluding as a matter of law that plaintiff's statements could be used against her in criminal proceedings and in entering summary judgment based on that conclusion. Whether defendant Flesch breached any duty of care to plaintiff when he advised her not to cooperate in the investigation—an issue on which the parties' experts have offered conflicting opinions—must be resolved by the trier of fact. *See McCafferty v. Musat, supra.*

II.

■ After determining that defendant Flesch did not breach his duty of care in advising plaintiff to remain silent during the pendency of the criminal proceedings, the trial court dismissed all plaintiff's claims, reasoning that all were predicated on the assertedly deficient advice about remaining silent. Although we reverse the trial court's summary judgment to the extent it concluded that the attorney's advice was not deficient as a matter of law, we nevertheless conclude that the contract claims, as pled, did not

state a separate, cognizable claim different from the professional negligence claim. Accordingly, those claims were properly dismissed as subsumed within the professional negligence claim. Based on plaintiff's counsel's statement at oral argument that plaintiff has abandoned the common law negligence claim originally asserted along with the professional negligence claim, we do not address the potential availability of the former claim.

Under Colorado law, a claim based on a violation of the duty imposed by the attorney-client relationship sounds in tort. While a claim for breach of the attorney-client contract itself is cognizable, such a claim must be based on a specific term in the contract. *McLister v. Epstein & Lawrence, P.C.*, 934 P.2d 844, 847 (Colo.App.1996)(claim that attorneys had breached contract provision requiring them to provide legal representation "faithfully and with due diligence" did not amount to breach of an undertaking to perform a specific act or achieve a particular result, but was simply a restatement of the duties of care and loyalty that attorneys owe to their clients; thus, trial court properly dismissed breach of contract claim as subsumed into malpractice claim); *see also International Tele–Marine Corp. v. Malone & Associates, Inc.*, 845 F.Supp. 1427 (D.Colo. 1994)(breach of contract claim asserting that law firm failed to adhere to its duty to disclose regulatory proceedings was not separately cognizable); *Sherman Industries, Inc. v. Goldhammer*, 683 F.Supp. 502, 506 (E.D.Pa.1988)("[I]n order to distinguish a contract malpractice claim from a tort claim, the plaintiff claiming under a contract theory must raise an issue as to whether it specifically instructed the defendant to perform a task that the defendant failed to perform, or as to whether the defendant made a specific promise upon which plaintiff reasonably relied to its detriment.").

Plaintiff's claims for intentional breach of contract and breach of contract both alleged simply that defendants "failed to adequately represent Plaintiff by failing to properly advise her." We agree with the trial court that, as pled, those claims were simply reformulations of the claim for professional negligence and thus did not state separate cognizable claims sounding in contract.

Plaintiff argues on appeal that her breach of contract claims were in fact premised, not on defendants' failure to perform their professional obligations, but on their breach of a specific contractual undertaking to represent her in connection with employment-related issues as well as criminal charges. She asserts that defendants breached that specific undertaking by abandoning her with respect to the employment matter after the criminal charges were dismissed.

However, although plaintiff referenced her abandonment theory in her response in opposition to summary judgment, her complaint includes no allegation that defendants breached any specific contractual undertaking by abandoning her, and plaintiff did not seek leave to amend her complaint to so allege.

Accordingly, the trial court's dismissal of plaintiff's existing breach of contract claims is affirmed. On remand, plaintiff may pursue her abandonment contention as part of her professional negligence claim or may seek leave to amend her complaint to assert cognizable breach of contract claims. Whether to allow amendment is a matter within the trial court's discretion. *See* C.R.C.P. 15(a). In any event, it will be for the trier of fact to determine whether defendants breached either their duty of care or a specific contractual undertaking when they ceased representing plaintiff after the criminal charges were dismissed.

The judgment dismissing plaintiff's breach of contract, intentional breach of contract, and common law negligence claims is affirmed. The judgment is otherwise reversed, and the case is remanded for further proceedings in accordance with the views set forth here.

Judge ROY and Judge LOEB concur.