HOPP & FLESCH, LLC; and Kevin C. Flesch, in his corporate and individual capacities, Petitioners,

v.

Raquel BACKSTREET, Respondent.

No. 04SC697.

Supreme Court of Colorado.

Nov. 21, 2005.

As Modified on Denial of Rehearing Dec. 19, 2005.

Law Office of Kevin C. Flesch LLC, Kevin C. Flesch, Downey & Hopp LLC, Wesley W. Hoyt, Englewood, for Petitioners.

LaFond & Sweeney, LLC, Richard C. La-Fond, Sheila H. Meer, Denver, for Respondent.

BENDER, Justice.

## I. Introduction

We review the court of appeals' decision in *Backstreet v. Hopp & Flesch L.L.C.*, 107 P.3d 1022 (Colo.App.2004), which held that a sheriff's department advisement to its employee, Raquel Backstreet, that any statements she made during an internal civil investigation could not be used against her in subsequent criminal proceedings, constituted a grant of use immunity under the apparent authority doctrine.[1] *Id.* at 1026. The court

of appeals overturned the trial court's ruling on summary judgment. The trial court held it was not malpractice, as a matter of law, for Backstreet's lawyer, Kevin Flesch, to advise her that any statements she made during the internal investigation would not be protected by the Fifth Amendment of the U.S. Constitution and therefore her statements could be used against her in a pending felony prosecution. *Id.* at 1024. The court of appeals concluded that whether Flesch breached his duty of care to Backstreet by advising her not to make statements during the investigation was an issue to be resolved by the trier of fact and thus the malpractice claim was improperly dismissed on summary judgment. *Id.* at 1026.

We undertake two analyses, embodying wholly different legal principles, to determine if the trial court's grant of summary judgment was appropriate: (1) whether the sheriff's department's non-statutory offer of use immunity to Backstreet was effective under the apparent authority doctrine as the court of appeals held; and, if not, (2) whether Flesch's advice to Backstreet constituted professional malpractice because the written advisement was sufficiently coercive so that any statements she made to the sheriff's department would violate her Fifth Amendment privilege against self-incrimination and thus be barred from use in later criminal proceedings.

Under these facts, we hold that Backstreet did not rely upon the sheriff's advisement that her statements could not be used in later criminal proceedings. Therefore, the apparent authority test as set forth in *People v. Fisher*, 657 P.2d 922 (Colo.1983), has not been satisfied. For the apparent authority doctrine to apply, the government official making the offer of immunity must in fact lack authority to grant immunity; and the person to whom the offer is made must rely upon the offer of immunity. Since Backstreet was represented by counsel who advised her that, contrary to the wording of the

---

1. The term "use immunity" refers to a witness's protection from the government's use of the witness's testimony, or any information derived from it, in any later criminal prosecution against the witness. 1 National Lawyers Guild, *Representation of Witnesses Before Federal Grand Juries*

§ 8.39, at 8–96 (4th ed.1999). Use immunity is different from transactional immunity, which is total immunity from prosecution for any transaction about which the witness testifies. *Id.* This case concerns use immunity only.

sheriff's advisement, any statements she made in the internal investigation could be used against her in a criminal proceeding, she did not rely on the advisement. Thus, we cannot imply use immunity based on the facts here.

We further hold that Flesch did not commit malpractice by advising Backstreet not to participate in the internal investigation because her statements could be used in subsequent criminal proceedings. The sheriff's advisement here, which instructed Backstreet that she *could* be disciplined or terminated if she did not cooperate with the internal investigation, was ambiguous. As a matter of law, the advisement could reasonably be construed to either satisfy or not satisfy the test of whether testimony is unconstitutionally compelled, as articulated in *People v. Sapp*, 934 P.2d 1367 (Colo.1997). Thus, by advising Backstreet not to participate in the internal investigation, Flesch did not breach his duty to Backstreet to employ the level of judgment ordinarily possessed by members of the legal profession. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo.1999).

We therefore conclude, as a matter of law, that Flesch's conduct did not fall below the requisite standard of care that he owed to Backstreet and reverse the decision of the court of appeals. We return this case to that court with directions to remand it to the trial court to dismiss the claim of professional negligence based on the attorney's advice regarding the sheriff's department employment civil investigation and to comply with the court of appeals' original remand order regarding petitioner's other claims.[2]

## II. Facts and Proceedings Below

Backstreet, plaintiff below, was employed by the Arapahoe Country Sheriff's Department as a nurse in the county's detention center. During the course of her employ-

ment, Backstreet made an error in administering medication to an inmate. The inmate sued Arapahoe County, Backstreet, and others for medical malpractice. In the ensuing investigation, the inmate's medical record was discovered to have been altered. During an interview by a criminal investigator from the sheriff's office, Backstreet, who was not then represented by counsel, stated that she might have altered the record. Backstreet was suspended with pay pending the outcome of the investigation.

Approximately six months later, the state filed felony criminal charges against Backstreet for forgery, tampering with evidence, and official misconduct. The sheriff's office changed her status to suspension without pay. Backstreet then hired the law firm of Hopp & Flesch, L.L.C. and attorney Kevin Flesch, defendants below, to defend her in the criminal case.[3] Flesch also represented her in the ongoing sheriff's office internal investigation. A month later, a county official asked Backstreet to participate in an internal affairs interview as part of that investigation. However, when the sheriff's office informed Flesch that he could not be present during internal affairs interviews, he advised Backstreet not to participate.

The sheriff's office attempted several more times to schedule an internal affairs interview with Backstreet. In the course of doing so, the sheriff's office provided Backstreet and Flesch with a written advisement informing Backstreet that none of her statements could be used against her in a subsequent criminal proceeding. The advisement further stated that if she did not participate in the internal investigation, Backstreet *could* be disciplined or terminated. The advisement provided, in pertinent part:

> You are entitled to all rights and privileges guaranteed by the laws and the Constitution of this State and the Constitution of

**2.** We granted certiorari on the following issue: Whether it was error for the court of appeals to reverse the trial court's determination of law that it was not malpractice for an attorney to advise his client that any statements made by the client in the context of a sheriff's department employment civil investigation regarding the client's alleged misconduct would not be protected by the

Fifth Amendment and could be used against the client in the pending criminal investigation.

**3.** Both Mr. Flesch and his law firm are petitioners in this case. However, because the issue we consider involves the legal advice given by Mr. Flesch, we will refer only to Mr. Flesch in our discussion.

the United States, including the right not to be compelled to incriminate yourself in a criminal matter, however, this is not a criminal investigation. I further wish to advise you that if you refuse to testify or to answer questions relating to the performance of your official duties or fitness for duty, you will be subject to administrative charges which *could* result in your dismissal from the Sheriff's Office. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding.

(Emphasis added.) The advisement was accompanied by a letter informing Backstreet that any "information obtained during the internal affairs interview cannot be used in the criminal investigation," citing *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and *Sapp*, 934 P.2d 1367, and including a copy of *Garrity*.[4]

Despite the assertions contained in the sheriff's advisement, Flesch advised Backstreet not to participate in any internal affairs interviews. Flesch reasoned that, under applicable case law, Backstreet's statements would not be deemed to be compelled by the state and would therefore not be protected under her Fifth Amendment privilege against self-incrimination. Hence, the statements could then be used against her in criminal proceedings. Relying on Flesch's advice, Backstreet again declined to take part in any internal affairs interviews.

The state eventually dismissed the pending felony charges against Backstreet. Still on administrative leave without pay, Backstreet retained another attorney to represent her for the remainder of the sheriff's office internal investigation. Backstreet was then recommended for termination due to her refusal to cooperate in the internal investigation. She was eventually reinstated with back pay after an administrative hearing, but was required to forfeit thirty days of back pay for refusing to cooperate with the internal affairs investigation.

Backstreet then sued Flesch for damages based on professional negligence and other theories. Backstreet claimed that Flesch's advice that she not participate in the internal investigation was negligent because she had received use immunity through the sheriff's advisement. Flesch moved for dismissal and summary judgment, arguing that his advice did not fall below the requisite standard of care as a matter of law.

Treating Flesch's motion as a request for determination of a question of law under C.R.C.P. 56(h), the trial court concluded that, as a matter of law, Flesch's advice to Backstreet that she should not participate in the interview did not fall below a minimum standard of care. In reaching that decision, the trial court found that, under Colorado case law, the sheriff's advisement regarding the internal affairs interview did not rise to the level of coercion to cooperate sufficient to violate Backstreet's Fifth Amendment privilege against compelled self-incrimination. In a subsequent order, the trial court granted the motion for summary judgment as to all of Backstreet's claims.

On appeal, Backstreet contended that the trial court erred in its ruling as a matter of law that statements made to her employer, the sheriff's office, during the internal investigation could be used later in the pending criminal proceeding. The court of appeals held that, because the sheriff's office had apparent authority to make a binding promise of immunity, the sheriff's advisement constituted an enforceable offer of use immunity to Backstreet. *Backstreet*, 107 P.3d at 1026. That court then concluded that whether Flesch's advice breached a duty of care to his client under such circumstances is a matter to be decided by a trier of fact and therefore inappropriate for resolution on summary judgment. *Id.*

### III. Analysis

◼ We review an entry of summary judgment based on a determination of a question

---

4. For simplicity, we refer to the combination of the sheriff's advisement and its accompanying letter as the sheriff's advisement.

of law under C.R.C.P. 56(h) de novo. *West Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002).

 This is a case about legal malpractice. The central question we must address is whether any legal theory sustains the claim that Flesch committed malpractice by advising Backstreet that any statements she made during the internal investigation would not be protected under the Fifth Amendment and could therefore be used against her in a criminal proceeding. However, the court of appeals did not reach a malpractice analysis because it construed the sheriff's advisement used in this case as a binding grant of use immunity under the apparent authority doctrine. Thus, before considering the malpractice claim, we first examine the principles underlying immunity and self-incrimination and then address apparent authority.

## A. The Fifth Amendment Privilege Against Self–Incrimination

 The Fifth Amendment of the U.S. Constitution, which applies to the states through the Due Process Clause of the Fourteenth Amendment, guarantees that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amends. V, XIV, § 1; *Malloy v. Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). In addition to protecting a person from being required to testify against herself in a criminal trial, the Fifth Amendment privilege against self-incrimination also allows her to refuse to answer questions in any type of proceeding where her answers might incriminate her in later criminal proceedings. *E.g., Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). The privilege is generally not automatically invoked, meaning if one "desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment." *Minnesota v. Murphy,* 465 U.S. 420, 427, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (quoting *United States v. Monia,* 317 U.S. 424, 427, 63 S.Ct. 409, 87 L.Ed. 376 (1943)).

 However, the Supreme Court has recognized exceptions to the general rule that the Fifth Amendment privilege against self-incrimination is not automatically invoked. One exception to this general rule applies when a suspect gives a confession while in police custody. *Id.* at 429, 104 S.Ct. 1136. A second exception pertains to situations where one is penalized for invoking the privilege in such a way that precludes the choice to remain silent, thus compelling incriminating testimony. *Id.* at 434, 104 S.Ct. 1136.

In *Garrity v. New Jersey,* the Supreme Court addressed how this second exception arises in cases where public employees are questioned by their employers regarding alleged wrongdoing. 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). The Court in *Garrity* held that when an employee is faced with the choice between forfeiting his job or incriminating himself, his decision to make a statement is not born of "free and rational choice." *Id.* at 497, 87 S.Ct. 616. Thus, any statements made under such circumstances would be compelled and, under the Fifth Amendment, could not be used in a criminal proceeding.

 The Fifth Amendment privilege against self-incrimination as articulated in *Garrity,* often called "*Garrity* immunity," differs from an affirmative grant of use immunity by the state. Garrity immunity is a self-executing invocation of the Fifth Amendment privilege against self-incrimination that is triggered by a public employer's actions. When a public employee is unconstitutionally coerced into making a statement under threat of job loss, a court must intervene and grant what amounts to use immunity in order to prevent the person's statements from being used against him in a criminal proceeding in violation of the Fifth Amendment. Hence, while *Garrity* immunity and state-granted use immunity may produce the same ultimate result in this case—protecting a public employee, here Backstreet, from her statements being used against her in a criminal proceeding—the two are nonetheless grounded in different principles.

The next step in our analysis requires us to examine the circumstances under which a court can find an offer of use immunity binding on the state, when the offer was made by

a government official who is unauthorized to grant immunity.

## B. Non-statutory Immunity

■ The court of appeals embraced the legal theory that the sheriff's advisement constituted an affirmative offer of use immunity from the sheriff's office to Backstreet, which could be made binding on the state under the apparent authority doctrine—that is, made binding even though the sheriff's office did not have authority to make such an offer under Colorado statute. A Colorado statute sets forth the parameters for offering immunity to witnesses who refuse to testify on the basis of the privilege against self-incrimination. Under the statute, a district attorney, attorney general, or state special prosecutor may request immunity for a witness. § 13–90–118(2), (3), C.R.S. (2005). Officials of the sheriff's department are not listed among those that may request immunity.

■ However, as the court of appeals correctly noted, an official not listed in section 13–90–118 may make an offer of immunity that can be made binding on the government if that official has apparent authority to make such an offer. *Backstreet*, 107 P.3d at 1025 (citing *People v. Romero*, 745 P.2d 1003 (Colo.1987)). In the context of unreasonable search and seizure, we explained that "apparent authority is not authority at all, but merely the appearance of authority." *Petersen v. People*, 939 P.2d 824, 830 (Colo.1997). Thus, under the apparent authority doctrine, although the sheriff's office was not authorized to offer Backstreet use immunity, a court can impose a valid grant of use immunity under certain circumstances. Nevertheless, we disagree with the court of appeals' conclusion that the facts in this case meet the requirements of the apparent authority doctrine.

■ In *People v. Fisher*, this court set forth the criteria for determining whether a person accused of criminal conduct may en-

force an offer of immunity by an official not listed in section 13–90–118. 657 P.2d 922 (Colo.1983). To assess whether such an offer of immunity is binding, three inquiries must be made: (1) whether the defendant's privilege against self-incrimination is implicated; (2) whether the defendant "reasonably and detrimentally relied upon [the government official's] promise by performing his side of the bargain;" and (3) whether a "remedy short of actual enforcement [of the promise] would ... approximate fundamental fairness." *Id.* at 927–28.

In assessing whether the circumstances of this case meet the *Fisher* test, the court of appeals relied on previous decisions of this court—*Romero*, 745 P.2d 1003; *People v. Manning*, 672 P.2d 499 (Colo.1983); and *Fisher*, 657 P.2d 922. The court of appeals concluded that the sheriff's department in this case was like the government officials in those cases, who had made offers of use immunity that could be found binding under the apparent authority doctrine. *Backstreet*, 107 P.3d at 1026. However, the cases cited by the court of appeals are distinguishable from this case and we deem them inapposite.

The circumstances in each of those cases met all the *Fisher* requirements, specifically the second requirement of detrimental reliance. Fisher was represented by counsel, but his lawyer was not present at the time government officials promised that his statements would not be used in subsequent criminal prosecutions. Neither Romero nor Manning was represented by counsel at the time government officials offered them immunity. Consequently, Fisher, Romero, and Manning made statements detrimentally relying upon those promises. Had the defendants in those cases been assisted by counsel and been advised that those officials did not have statutory authority to offer binding immunity, they could not have relied on the offers.[5] Thus, a finding of use immunity under the apparent authority doctrine could only apply in a con-

---

**5.** Because this is an attorney malpractice case, we do not address the possible scenario in which an employee relies on the assurances of his employer that any statements the employee makes in an internal investigation will not be used

against him in a later criminal proceeding, in spite of being advised by his lawyer that the employer is not authorized to make such an offer.

text, unlike this case, in which a defendant was not assisted by counsel.

Because Backstreet was advised by Flesch regarding the sheriff's office's promise that any statements she made during the internal investigation would not be used in a criminal proceeding, apparent authority cannot apply here. In effect, Flesch counseled Backstreet not to participate in the internal investigation because the sheriff's advisement was insufficient to prevent her statements from being used in criminal proceedings. Based upon that advice, Backstreet chose not to rely at all on the promise of the sheriff's office; consequently she could not meet the requirement of the second *Fisher* factor. Thus we conclude that, based on a *Fisher* analysis, the court of appeals erred in determining that the sheriff's advisement could be transformed into use immunity under the apparent authority doctrine.[6]

## C. Professional Negligence

Having eliminated the theory of apparent authority to support the result reached by the court of appeals that the grant of summary judgment against the plaintiff was improper, we now return to the issue of malpractice. If the wording contained in the sheriff's advisement is sufficiently coercive under federal constitutional law, as interpreted by this court in *People v. Sapp*, to trigger Backstreet's Fifth Amendment privilege against self-incrimination, then Flesch could have committed malpractice by advising Backstreet that it was not.

To establish a legal malpractice claim, the plaintiff must show her attorney was negligent by proving three elements: (1) the attorney owed a duty of care to the client; (2) the attorney breached that duty; and (3) by breaching his duty, the attorney proximately caused damage to the client.

*Stone v. Satriana*, 41 P.3d 705, 712 (Colo. 2002). Our analysis focuses on the second element—the duty owed by Flesch to his client, Backstreet.

An attorney owes his client a duty "to employ that degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession in carrying out the services for his client." *Bebo Constr. Co.*, 990 P.2d at 83. We have noted that, in determining whether a lawyer has exercised judgment ordinarily possessed by members of his profession, the relevant focus is on what a lawyer would have done at the time, excluding "the benefit of hindsight." *Stone*, 41 P.3d at 712. To analyze Flesch's judgment in this case, we must first explore the constitutional principles underlying his advice to Backstreet.

Under *Garrity*, if the sheriff's office compelled Backstreet's participation in the internal investigation through threat of discharge, any statements she made would have been inadmissible in a later criminal proceeding as a violation of her Fifth Amendment privilege against self-incrimination. Therefore, the analysis of the malpractice issue turns upon the question examined by the trial court—whether the sheriff's advisement was adequate to trigger Backstreet's Fifth Amendment privilege against self-incrimination under *Garrity*. Stated another way, the question we must address is whether the advisement was sufficiently coercive to create an objectively reasonable fear that she would be fired if she did not cooperate with the sheriff's office investigation.

This court applied *Garrity* in *Sapp*, 934 P.2d 1367. In *Sapp*, officials wished to question police officers as part of an internal investigation of alleged misconduct. *Id.* at 1368–69. After giving state-

---

6. We also note that the letter from the sheriff's office that accompanied the advisement supports this conclusion. In *Romero*, we explained that a court should consider the form and content of written promises of immunity, along with oral statements to the defendant and other extrinsic evidence relating to the government's dealings with the defendant. 745 P.2d at 1010. In this case, the letter cited *Garrity* and *Sapp* for the proposition that any statements Backstreet made

during the internal investigation could not be used against her in a later criminal proceeding, and included a copy of *Garrity*. The written communications from the sheriff's office support the theory that the advisement was merely a notification of Backstreet's existing constitutional privilege against self-incrimination as articulated in *Garrity* and *Sapp*. Neither the letter nor the advisement mentions the word "immunity."

ments during the investigation, the officers faced criminal charges based on those statements. *Id.* at 1369. The officers sought to have the statements suppressed in the criminal proceeding, arguing that they were improperly compelled to give the information in violation of their Fifth Amendment privilege against self-incrimination. *Id.* In determining whether the statements were in fact compelled, and therefore inadmissible in the criminal trials, this court in *Sapp* adopted the two-prong test articulated in *United States v. Friedrick,* 842 F.2d 382 (D.C.Cir.1988). Under the test, "statements are compelled by threat of discharge from employment where: (1) a person subjectively believes that he will be fired for asserting the Fifth Amendment privilege, and (2) that belief is objectively reasonable under the circumstances." *Sapp,* 934 P.2d at 1373. Whether an employee's subjective belief that he will be terminated for asserting his Fifth Amendment privilege is objectively reasonable under the circumstances is a question of law. *Id.* To be objectively reasonable, the belief must result from significant coercive action of the state, which in turn must be "more coercive than that resulting from the general obligation imposed on a witness to give truthful testimony." *Id.*

Applying *Sapp,* we reason that whether the sheriff's advisement in this case was sufficiently coercive to trigger Backstreet's privilege against self-incrimination is subject to differing legal conclusions. It is not clear that the sheriff's advisement in this case, which informed Backstreet that she *could* be fired, reaches the level of "significant coercive action of the state" required by *Sapp.* 934 P.2d at 1373. The trial court found it did not, absent a direct threat or rule mandating termination for noncooperation.

However, the *Sapp* test is not formulated for cases in which there is a clear threat of mandatory termination. The analysis is devised for the type of circumstances this case presents—those that are ambiguous as to whether they present a threat of job loss significant enough to be considered improper compulsion in violation of the Fifth Amendment privilege against self-incrimination. We stated in *Sapp* that the government must

play a "significant role in creating the impression that [an employee] *might* be discharged for asserting the privilege." 934 P.2d at 1374 (emphasis added). If a government employer informed its employee that she would definitively be terminated for invoking her Fifth Amendment privilege, then there would be no need to engage in the two-prong *Sapp* test. There would be no question that the employee subjectively believed she would lose her job, and that her belief was objectively reasonable. But where the government creates an impression that the employee *might* be fired, here by use of the phrase "could result in your dismissal," a *Sapp* analysis is necessary to determine whether the level of compulsion was unconstitutional.

The sheriff's advisement in this case is sufficiently ambiguous so that reasonable minds could differ on what result a court would reach under a *Sapp* analysis. The advisement states that Backstreet *could* be terminated for not cooperating with the internal investigation, not that she would definitely be terminated. Thus, this ambiguous sheriff's advisement, as a matter of law, can be interpreted under *Sapp* to lead to either conclusion: that the advisement was either inadequate or adequate to clothe Backstreet with the protective cloak of the Fifth Amendment privilege. Because our analysis occurs in the context of summary judgment granted in an attorney malpractice case, we do not decide at this time which interpretation is appropriate. We leave that for another day and now turn to an analysis of the duty of care owed by Flesch, the attorney, to his client, Backstreet.

## IV. Application

We now apply the principles just discussed to the issue of whether Flesch committed malpractice by advising Backstreet that her statements would not be protected under the Fifth Amendment and could therefore be used against her in a criminal proceeding.

We note that where, as here, an employee is facing felony charges in addition to workplace sanctions, her attorney may be faced with a choice between protecting his client from one or the other. In this case, defense

lawyer Flesch exercised caution by advising his client to be more concerned about the potential ramifications of felony convictions, including the loss of liberty, than the possible civil consequences of not cooperating with her employer. This, as stated by one of Flesch's experts, is certainly an accurate reflection of judgment ordinarily possessed by members of the legal profession, and particularly so when the client has already made potentially incriminating statements.[7]

Therefore, because this particular sheriff's advisement could be construed to both meet and not meet the *Sapp* test, and because Flesch was clearly acting within the requisite standard of care owed to his client Backstreet, malpractice cannot occur.

## V. Conclusion

For the reasons stated, we reverse the judgment of the court of appeals and return this case to that court with directions to remand it to the trial court to dismiss the claim of professional negligence based on the attorney's advice regarding the sheriff's department employment civil investigation and to comply with the court of appeals' original remand order regarding petitioner's other claims.

Justice COATS dissents.

Justice COATS, dissenting.

Although I too believe the court of appeals' reliance on our due process/promissory estoppel line of authority is misplaced, I nevertheless agree with its decision to remand for further proceedings. Where it is at least clear (even according to the majority) that Backstreet's attorney failed to appreciate, and therefore failed to properly advise his client of, the effect of the sheriff's "Garrity advisement," I believe the allegation that he failed to employ the knowledge, skill, and judgment ordinarily possessed by members of the legal profession presents a question that cannot be resolved on the record before us. Because I am particularly concerned that the majority, in finding the threat of job loss in this case to be ambiguous, misconstrues a matter of United States constitutional law already resolved by the United States Supreme Court, I write separately to express my dissenting view.

For almost 40 years it has been settled that the due process protection of the Fifth and Fourteenth Amendments against coerced statements prohibits the use in subsequent criminal proceedings of statements obtained under threat of removal from office, whether the threatened office-holders are policemen or "other members of our body politic." *Garrity v. New Jersey,* 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). While the Supreme Court has subsequently made clear that the Fifth Amendment privilege against self-incrimination is broadly applicable in this context and that threats of dismissal from public employment are equally coercive of a waiver of that privilege, *see Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973), *Garrity* itself was clearly decided as a matter of due process, *Garrity,* 385 U.S. at 499–500, 87 S.Ct. 616; *accord id.* at 506–510, 87 S.Ct. 616 (Harlan, J., dissenting) (taking the majority to task for creating a new doctrine of involuntariness, as a matter of law, without consideration of the totality of the factual circumstances). It is therefore inconsequential, at least in this case, where the threats were

---

7. Flesch's expert, past president of the National Association of Criminal Defense Lawyers, Larry S. Pozner, emphasized the high stakes involved when a client has been charged with felony crimes:

 A defense lawyer would and should have been concerned about statements made by Ms. Backstreet in her initial interview as a part of the internal investigation.... From a criminal defense standpoint, the defense attorney must protect the client from the greater harm of a possible felony conviction rather than the lesser harm of civil consequences.... The life altering consequences of the conviction of a felony are much greater than the possible consequences of an employer's civil sanction, especially when comparing the loss of one month's salary versus a felony record. In the event that the client's statement in the administrative interview led to the client's conviction of a felony, she would not only lose a month's salary, she would lose her job with the Arapahoe County Sheriff's Office because of the felony conviction, as well as lose some or all of her freedom because of a possible jail sentence and/or probation which would restrict her freedom.

made by a law enforcement agency, whether the information sought by the sheriff's department would have been demanded of Backstreet in a proceeding to which the privilege applied.

My primary disagreement with the majority, however, arises from its characterization of the threat in this case as ambiguous and fairly construed as either sufficiently coercive, or not sufficiently coercive, to render a waiver of the privilege against self-incrimination involuntary. Maj. op. at 1184. The majority makes clear that it considers a threat of discharge clearly coercive only if the threat puts the employee on notice that he will definitely be discharged for failing to answer his employer's questions, and not when it merely threatens that he "will be subject to administrative charges which could result in [his] dismissal." I not only find this distinction unconvincing, but also completely devoid of support in the prior holdings of this or other jurisdictions, and in direct conflict with both the rationale of and specific advisement in *Garrity* itself.

In *Garrity*, the Supreme Court made clear that the appellant's statements were deprived of their voluntary character by a warning that if he exercised his privilege to refuse to answer, "he would be subject to removal from office." *Garrity*, 385 U.S. at 494, 87 S.Ct. 616; *see also id.* at 505 n. 1, 87 S.Ct. 616 (Harlan, J., dissenting) ("The warning given to Chief Garrity is typical. . . . '[Y]ou, as a police officer under the laws of our state, may be subjected to a proceeding to have you removed from office if you refuse . . . .' "). As in *Garrity*, the warning given Backstreet informed her that if she refused to testify or answer questions, she would be subject to administrative charges and that those charges could result in her dismissal. Nowhere did *Garrity*, or any other pronouncement of the Court, suggest that an employee's free choice would not be impermissibly burdened by such a threat, merely because it fails to mandate discharge as an automatic consequence of refusing to speak.

We, along with a number of other jurisdictions, have previously held that an employee's subjective fear of being fired for failing to cooperate is not sufficient to support an objectively reasonable expectation of discharge. *People v. Sapp*, 934 P.2d 1367, 1373 (Colo.1997); *e.g., United States v. Friedrick*, 842 F.2d 382, 396 (D.C.Cir.1988). Rather, we held, "[t]he state must have played a significant role in creating the impression that [the employee] *might* be discharged for asserting the privilege . . . ." *Sapp*, 934 P.2d at 1374 (emphasis added). We concluded merely that in order to be significant, the state's role in creating such beliefs must have been more coercive than the requirement that a witness testify truthfully. *Id.* Neither this court nor the Supreme Court, however, has ever suggested that the right to refuse is impermissibly burdened only by a promise of discharge, as distinguished from a mere threat of discharge, no matter how directly linked to a refusal to cooperate.

I therefore consider it clear that the sheriff's "Garrity advisement" in this case was not only designed for the express purpose of, but would actually have had the effect of, rendering any statements made by Backstreet to the sheriff's investigator (and any evidence derived from them) involuntary and inadmissible in a subsequent criminal proceeding.[1] While I can appreciate counsel's dilemma in advising a client about the risks and potential consequences of criminal prosecution despite such a warning, he is nevertheless not relieved of making a reasonable assessment of the law and assisting his client to choose among uncertain outcomes.

Even the majority is unwilling to say that Backstreet's counsel properly advised her about the effect of the advisement. It apparently holds merely that in light of the uncertainties, and the corresponding seriousness of a felony conviction, counsel's advice to his client that her statements could still be used against her in a criminal proceeding could not amount to malpractice. While I do not

---

1. It is less clear to me that the advisement's prediction about its legal effect amounted to a promise of immunity, sufficient to permit discharge upon Backstreet's refusal. *See Lefkowitz*, 414 U.S. at 80–81, 94 S.Ct. 316 (citing *Gardner v.* *Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968) and *Uniformed Sanitation Men Ass'n, Inc. v. Sanitation Comm'r*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968)).

suggest that advising non-cooperation was malpractice, it is clear to me that counsel's advice, and failure to clarify any uncertainties in favor of his client, were based on a misunderstanding of the law. The question whether this course of action amounted to a failure to employ the degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession was not properly resolved by the trial court because of its similar misunderstanding of the law. Because I do not believe the matter is resolvable, as a matter of law, on the record before us, I would remand for further proceedings.

I therefore respectfully dissent.